FRANK BUCCI et al.

*v.*

STEFON POPOVICH et al.

[Decided July 30th, 1921.]

1. At common law before issue born, a husband had in his wife's lands
an estate of freehold during their joint lives, and after issue born alive
this estate of freehold continued for the husband's life, and was called an
"estate by the curtesy initiate" during his wife's life, and on her death it
became consummate.

2. The Married Woman's act (*3 Comp. Stat. p. 3225*) was intended to
free a married woman from the hardships of the common law, and to give
her the sole enjoyment of her separate estate, and should be liberally con-
strued in her favor.

3. This act destroyed the estate of tenancy by the curtesy initiate.
but if she has not aliened the estate with the consent of her husband, does
not defeat curtesy at her death.

4. Under this act the interest of a husband in his wife's lands after
birth of issue is an "inchoate right of curtesy," the right to take posses-
sion of her lands for his life in case he survives his wife.

5. The inchoate right of curtesy of a husband in his wife's separate
real estate is personal to him, and not subject to the claims of his credi-

tors, and a conveyance of the wife's separate real estate, in which the husband joins, is free from the claims of the husband's creditors.

6. Under the Married Woman's act and the nineteenth section of the Conveyance act (*2 Comp. Stat. p. 1539*) the inchoate right of curtesy of a husband in his wife's separate real estate does not pass to his creditors under the Bankruptcy act, and where a bankrupt husband joined his wife in a deed of her property, the grantee in said deed acquired a title free from claims of such creditors as against a remote purchaser's objection in a suit for specific performance.

On bill, &c. On motion to strike out bill.

*Messrs. Burnett, Sorg, Murray & Duncan,* for the complainants.

*Mr. Gilbert M. Cornish,* for the defendants.

FIELDER, V. C.

The bill of complaint alleges that on April 2d, 1921, complainants entered into a written contract with defendants, wherein complainants agreed to sell, and defendants agreed to buy, certain premises in the city of Newark; that prior to the date fixed for closing title, defendants informed complainants that defendants would not accept a conveyance from complainants because one of complainants' predecessors in title, to wit, Bertha Miller, wife of Morris Miller, acquired title to the premises in question by deed dated May 20th, 1902, and that on October 25th, 1902, said Morris Miller was adjudged a bankrupt and a trustee of his estate was appointed, which trustee, by virtue of such adjudication, acquired an estate or interest in said premises, and that, notwithstanding such adjudication in bankruptcy, said Bertha Miller and Morris Miller, her husband, by their deed dated February 1st, 1906, conveyed said premises, and that said Bertha Miller and Morris Miller are still alive and have six children, one or more of whom were born prior to the filing of the petition in bankruptcy against Miller, and that Morris Miller was discharged in bankruptcy, January 5th, 1903, and that the conveyance by Bertha Miller and Morris Miller did not divest the trustee in bankruptcy of his estate or interest in said premises. The

bill further alleges that defendants have waived tender of a deed and have stated that they decline to accept a conveyance from complainants because of the outstanding interest of said trustee in bankruptcy. Complainants offer themselves ready and willing to perform their contract and pray that specific performance may be decreed on the part of defendants. Defendants now move to strike out the bill of complaint on the ground that it discloses no cause of action, in that complainants seek the specific perform- ance of a contract to purchase land, the title to which, according to the bill, is defective, encumbered and subjected to an out- standing interest.

By act of congress relating to bankruptcy (section 70) the trustee in bankruptcy acquires, among other things, all property of the bankrupt "which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him."

The question presented is, where a married woman is the owner of real estate in her own name, whether after issue born alive, her husband has such a right, interest or estate in his wife's lands as will pass to his trustee in bankruptcy in her life- time, or whether, after her husband has been adjudged a bank- rupt, the wife can by deed, to which the husband expresses his assent by joining therein, convey a title free from the lien of her husband's creditors in bankruptcy.

By the common law, before issue born, the husband had in his wife's lands an estate of freehold during their joint lives, and after issue born alive this estate of freehold continued for his own life. It was termed an estate by the curtesy initiate during his· wife's life and it became consummate on her death. *Doremus* v. *Paterson, 69 N. J. Eq. 188; affirmed, 69 N. J. Eq. 775.*

By the Married Woman's act of March 25th, 1852, and subse- quent acts, found in *Comp. Stat. p. 3225,* the real estate which a wife owns at the time of her marriage, or which she shall there- after acquire, and the rents, issues and profits thereof, are her sole and separate property, as though she were a single woman and are not subject to the disposal of her husband nor liable for his debts. By that act she is given the right to bind herself by contract in the same manner and to the same extent as though

she were unmarried, except that she cannot execute any conveyance of her real estate, or any instrument encumbering the same, without her husband joining therein, and any judgment obtained against her is as valid and effectual as though she were unmarried, except that such judgment cannot affect the right of her husband in her lands, as tenant by the curtesy after her death. She is also given the right to dispose of her real property by will with the same effect as though she were unmarried, except that she cannot dispose of the interest therein to which her husband by law would be entitled at her death.

The intention of this legislation was to free the married woman from the hardships under the common law which subjected her real estate so largely to her husband's control and to give her the sole use and enjoyment of her separate estate. It should be liberally construed in her favor so that all the benefits intended thereby shall inure to her. If the right or interest which a husband has in his wife's separate property, either before or after the birth of issue, is a right or interest which, within the meaning of the Bankruptcy act, he could "by any means have transferred, or which might have been levied upon and sold under judicial process against him," then he may convey or encumber it and his judgment creditors may levy on and sell it under execution and thus for the husband's right or estate may be substituted the right or estate of an utter stranger with whom the wife must treat whenever she desires to convey her land or any interest therein. She still will be unable to make a valid deed unless her husband joins with her, and besides his consent she will be required to obtain the release of the person to whom her husband's interest or estate has been transferred. In such a situation, she would neither be seized nor possessed of her property for her sole and separate use as though she were a single woman, but rather her property, or an important interest therein, would be subject to the disposal of her husband, and, in effect, made liable for his debts, contrary to the statute.

I find no case in our reports which in my opinion supports the defendants' contention in this suit. None of the cases on which the defendants rely intimate that the husband's right or estate by the curtesy can be conveyed by him apart from his wife

or that it is subject to seizure by his creditors. I have examined the following cases which touch the question at issue here, none of which, however, seem to me to be decisive:

In *Trade Insurance Co.* v. *Barracliff, 45 N. J. Law 543,* the court of errors and appeals was dealing with the question whether the husband had an insurable interest under a fire insurance policy in his wife's real property, and held that he had, because he was in possession and enjoyment thereof as the head of the household and because he had an inchoate right of curtesy which by the birth of offspring, *on his wife's death,* he surviving, would bloom into a freehold.

In *Doremus* v. *Paterson, supra,* the question was whether the husband was a necessary party to a bill filed with respect to an injury to the wife's lands. In his opinion, reported in *69 N. J. Eq.,* the vice-chancellor said (at *p. 193*): "What the Married Woman's act did was to deprive the husband of the freehold during his wife's life. He no longer held a freehold estate in possession. It did not affect the estate *which he took after her death. Upon that event* he became entitled to a freehold interest in possession for his own life," and then the vice-chancellor proceeded to observe: "I have never been able to understand why the husband has not under these circumstances (which included birth of issue) an estate in remainder in his wife's lands which is as completely vested in him as any vested estate in remainder for life is ever vested in any remainderman," and, after considering several decisions in our courts, he decided the real point at issue in the case by saying (at *p. 198*): "In view of this course of decisions, I think it may be affirmed that it has never been expressly decided that after issue born, the husband is not a necessary party in equity to any suit which touches or *affects his right to curtesy after his wife's death."* It should be observed that in deciding this case on appeal, the court of errors and appeals did not refer to the vice-chancellor's conclusions on the subject of curtesy, but affirmed his decision for other reasons.

*Leach* v. *Leach, 69 N. J. Eq. 620,* was an application by a wife for the payment to her of surplus money arising on foreclosure of a mortgage covering her lands. The husband resisted the application and set up his curtesy right in the land. The de-

cision in that case was that because the wife had, in any event, an estate for life in the lands, the husband's consent to the payment to her of a gross sum in lieu of her life estate was not necessary.

*In re Staheli, 78 N. J. Eq. 74,* and *In re Riva, 83 N. J. Eq. 200,* were proceedings brought by married women living apart from their husbands, for leave to dispose of their real estate which did not come to them from their respective husbands. In the former case the husband's possible right of curtesy was held not to be a bar to granting the application, while in the latter case his curtesy right, which the vice-chancellor designated as an "estate," was held to be sufficiently substantial to make it undesirable to order a sale because of the largely-reduced price that would be offered for the wife's estate. Both of these cases were disapproved by the chancellor in *Riley* v. *Riley, 92 N. J. Eq. 465,* so far only as they infer that there is a time in the life of a woman when she is presumed in law to be unable to bear children.

*Hackensack Trust Co.* v. *Tracey, 86 N. J. Eq. 301,* is a case upon which the defendants most strongly rely in support of their motion. It involved the disposition of surplus money arising on a sale of the wife's land under foreclosure. In his decision the chancellor dealt with the subject of curtesy both at common law and since the passage of the Married Woman's act, and, following Vice-Chancellor Stevens' observation in *Doremus* v. *Paterson, supra,* he laid down the proposition that immediately upon marriage, the husband acquires a contingent estate in remainder in his wife's lands, and that upon the birth of issue, he has a vested estate in remainder. It is apparent that the chancellor did not have a situation like the present case in mind. I take it that he was dealing solely with the question involved in the case before him and with similar questions arising between husband and wife, as to their respective rights and interests in the wife's real estate, and that he did not intend to say that upon the birth of issue, the husband becomes seized of such a vested estate in remainder in his wife's lands as a judgment creditor could seize and sell under execution, but that what he decided was that the husband's right of curtesy was a vested right of which he could not be divested by any act of the wife or by the involuntary sale

*93 N. J. Eq.* Bucci *v.* Popovich.

of her land under execution. I feel confirmed in my reading of his opinion by the fact that he cited *Porch* v. *Fries, 18 N. J. Eq. 204* (hereinafter referred to), with approval, and because he said (at *p. 307*) : "The decided cases hold that the Married Woman's act of 1852 operates to deprive the husband of an estate by the curtesy initiate—which was a freehold estate in possession—during their joint lives, but does not defeat the *right of curtesy* that he has in the event of the birth of issue, he surviving her. Therefore, do not the declarations in the opinions, that under the act in question, a husband * * * can acquire no right or interest in his wife's separate real property during their joint lives mean no *possessory right or interest,* and that that is the interest or estate of which he is deprived, *and that only;* and, further, that the *right and interest* which he has to succeed to a freehold estate in possession for his own life *after her death* (issue being born alive) *inheres* in him from the time of the marriage until his death during her lifetime?"

*Reese* v. *Stires, 87 N. J. Eq. 32,* was a suit for partition involving the constitutionality of the act (*P. L. 1915 p. 61*) abolishing dower and curtesy. A married woman was one of the tenants in common and the chancellor there held that had issue been born of the marriage, the husband had a "vested estate in remainder known to our law as an *inchoate right of curtesy."* Here, again, the chancellor dealt with rights as between husband and wife and he was not called upon to consider and did not determine whether the husband's "inchoate right of curtesy" was such an "estate in remainder" as his creditors could seize.

I think that the reported cases which more closely approach the instant case are *Porch* v. *Fries, supra; Middleton* v. *Steward, 47 N. J. Eq. 293; Bristol* v. *Skerry, 64 N. J. Eq. 624,* and *Winterbaum* v. *Duesel, 93 N. J. Law 82,* from which I gather that the Married Woman's act so changed the status of the husband with regard to his wife's lands that he has, during her life, no interest or estate in them, but that she holds them to her separate use as if she were a *feme sole,* free from his control, and that she can sell them with his assent, and if she so sells and conveys them, she conveys them as she holds them, free from any interest or estate of her husband; that the Married Woman's act

destroyed the estate of tenancy by the curtesy initiate, but it does not defeat the husband's curtesy at the death of his wife, provided she has not aliened her estate before.

The interest which the husband has in his wife's lands, after the birth of issue, may be described as an inchoate right of curtesy, which is the right to take possession of her lands for his life, in case he survives her. She cannot divest him of this right by her own conveyance, nor can he be divested by an involuntary sale of her lands under judicial proceedings against her, but he can lose his right during her life by his prior death, or by joining in a deed of conveyance with her, or by a decree of absolute divorce, or (in a proper case) under our statutes authorizing the sale of real property of a married woman when the property comes to her otherwise than through her husband and she is living separate from him. I regard his inchoate right of curtesy as a right created by or growing out of the marriage state, personal to him and not subject to the claims of his creditors. He may at any time during coverture assent to a sale by his wife of her lands, and if he signifies such assent by joining in a deed with her, it is my opinion that she conveys, as a *feme sole* would, free from any interest or estate of her husband and free from any claim of her husband's creditors.

It may be argued that under the Conveyance act (*Comp. Stat. p. 1539 § 19*) the husband has such a contingent interest or other future estate or interest in expectancy in his wife's real estate as he can convey or assign, and that his grantee or assignee, upon the wife's death during the husband's lifetime (issue having been born alive), will be entitled to succeed to the husband's consummate right of curtesy. Without considering this argument, it is sufficient for the purposes of this case to say that if the husband has such an estate or interest as is defined in this act, the act expressly provides that such interest or estate is not liable to be levied upon and sold by virtue of an execution. It could therefore not pass under the Bankruptcy act.

I conclude that the objection which the bill of complaint states the defendants make to the title complainants are ready to convey is not well taken, and that the bill of complaint, therefore,

sets out a good cause of action. The motion to strike out will be denied.

I regard this case as important because it will affect the title to land, and I have, therefore, conferred with the chancellor about it and I am authorized by him to say that he concurs in the result I have reached.