On petition for an order directing the clerk to pay out moneys deposited with him.
A married woman filed a petition under the authority of the Married Women's act. 3 Comp. Stat. p. 3233 §§ 8q and 8r.
Such proceedings were had thereon that on the 7th day of August, 1925, a decree was made in accordance with the prayer of the petition and it was therein provided that out of the purchase money to be paid for the lands of the married woman the sum of $1,917.52, being the value of her husband's estate or interest therein, should be held by the clerk of this court until the court's further order.
The woman's husband died on the 4th day of May, 1928. Before the death of the husband the sheriff of Mercer county attached in the hands of the clerk the said sum of money so *Page 352 
held by him, pursuant to the direction of a writ of attachment which had then issued against the moneys and effects of the said husband. Judgment was thereafter rendered in favor of the attaching creditor for $7,777.04. Thereafter, the auditor in attachment filed the present petition on or about the 3d day of June, 1926, praying an order directing the payment to him of the said sum in the hands of the clerk. This application is resisted by Mrs. German upon the ground that the death of her husband cut off all the rights of him, his heirs, executors, administrators and assigns and, consequently, of his creditors.
It would be a waste of time to enter into any discussion as to the rights of husbands in lands held in fee-simple by their respective wives, either under the common law of England or the changes that have been made by statute. The act under which the decree herein was made provides that in case of mental incapacity of her husband, any woman owning lands within this state, desiring to convey the same, may do so without the concurrence of her husband upon the decree of the chancellor free from any right of curtesy. It is further provided that upon any such application the court shall ascertain the value of the husband's interest in such lands in money, and that out of the purchase price to be paid for her land, the purchaser shall pay to the committee or guardian of such husband, an amount equal to such value, or if there be no such committee or guardian, then to the clerk of this court. The effect of this statute, as I see it, is to destroy entirely any estates or interests by such a husband, and to substitute for that estate or interest a sum of money that shall clearly represent the value thereof. And the further effect is produced, that while the wife is not compelled by the legislation to part with her lands, she is obliged, if she takes advantage thereof, to pay for the privilege which she otherwise would not have, by surrendering a portion of the purchase price received, for the benefit of the estate of her unfortunate spouse. Therefore, it seems to me that there is brought into existence a fund that is personal property for the exclusive benefit of the husband's estate. Such fund has none of the attributes of *Page 353 
real estate. The statute does not prescribe any limitation upon the character or use of this money after it is paid by the purchaser of the woman's land, not to her, but to her husband's personal representative. The guardian is not restrained in his application of it for the benefit of his ward as he may apply other money coming into his hands. There is no provision whereby she retains or secures any other or further right in such money than the law gives her over any of the other personal property in her husband's estate. Consequently, it appears unescapable that a fund thus acquired by a husband's estate is subject to the demands of his creditors under the same rules that obtain as to any other chattels.
It will readily be seen that the views herein expressed make it impossible for me to agree with the arguments advanced by counsel for Mrs. German which are based on the decision in Bucci v.Popovich, 93 N.J. Eq. 121. In that case Vice-Chancellor Fielder was dealing with a matter of title, and he held that our Married Women's act (3 Comp. Stat. p. 3225 § 3) destroyed the estate of tenancy by the curtesy initiate, whereas I am confronted by an entirely different part of the statute which permits the conversion of real property into personal property.
It is further argued on behalf of the widow that even if such an attachment would lie at the time it was made, the death of the husband would terminate any estate by the curtesy, even consummate, which is the highest tenure to which it could ever rise. The reason I cannot arrive at any decision by analogy to this division of the common law has already been made to appear.
I will advise an order in conformity with the prayer of the auditor's petition. *Page 354