THOMAS M. HOPPER AND PAUL L. SANDERS, PLAINTIFFS,
v. WILLIAM N. GURTMAN, DEFENDANT.

Decided September 22, 1939.

For the defendant, *Aaron Z. Schomer*.

For the plaintiffs, *Charles Bernstein* (*Emil M. Wulster*, of counsel), against the motion.

BARBOUR, S. C. C. This matter comes before the court on motion to strike the complaint on the grounds, *inter alia*, that it is in part sham and in part insufficient in law.

Of the many questions presented it is necessary to consider only two:

1. Did a purchaser at a judicial sale of a married woman's separate real property on a judgment against both husband and wife acquire good title free and clear of the husband's inchoate right of curtesy, title to said property having been acquired by such married woman in 1919?

2. Is an attorney liable for an error of judgment where such a sale forms part of the chain of title?

The pertinent facts are:

On May 28th, 1919, Rose Ginenthal became the owner in fee-simple of certain real estate, she being then lawfully married to William Ginenthal, they being still living and married to each other. Children were born of such marriage, capable of inheriting.

On or about October 6th, 1927, such premises became encumbered by a mortgage made and executed by said Rose Ginenthal and William Ginenthal, her husband, to Thomas N. Washburn (of whose estate plaintiffs are trustees) to secure the sum of $10,000.

On August 29th, 1932, judgment was entered in behalf of one Sigmund Gurtman against said Rose Ginenthal and William Ginenthal in the Passaic County Circuit Court. Execution was issued thereon, levy made and the right, title and interest of both defendants in said premises were sold thereunder by the sheriff of Passaic county, at public sale, to said Sigmund Gurtman on or about October 28th, 1932.

On or about May 18th, 1933, Thomas M. Hopper and Paul L. Sanders, trustees of the estate of Thomas N. Washburn, entered into an agreemnt with said Sigmund Gurtman for the purchase from him of said premises for the sum of $105, subject to the aforementioned mortgage.

Thereafter, plaintiffs retained and employed the defendant to examine the title to such premises. Defendant, on or about August 14th, 1933, furnished to plaintiffs a report thereon and certificate of title, accompanying an abstract of title.

In the abstract of title defendant set forth the judgment above referred to, the sheriff's deed, the mortgage and a certain writ of attachment issued out of the Passaic County Circuit Court on July 30th, 1929, in the amount of $700 at the suit of Abraham Zukofsky against Rose Ginenthal, and certified that he found nothing else of record affecting said property.

The defendant was then of the opinion that the said Rose Ginenthal and William Ginenthal, her husband, were divested of title to such premises by the execution sale and, in reliance on such opinion, plaintiffs took title thereto on or about August 16th, 1933, and paid the agreed purchase price of $105.

Subsequently, plaintiffs were advised by other counsel (the attorney of record in this action, Charles Bernstein) that such execution sale did not divest William Ginenthal of his inchoate right of curtesy in such premises.

It is to be noted that plaintiffs were trustees of the estate of Thomas N. Washburn, the mortgagee, that the abstract of title showed certain liens or encumbrances prior to the lien of the judgment in question but subordinate to the lien of the mortgage, that the mortgage was paramount to Sigmund Gurtman's title, and that the price paid to said holder of the legal title was $105.

Some negotiations and proceedings were had to try to remove the lien of the writ of attachment but without success. Mr. Bernstein then advised plaintiffs to institute proceedings to foreclose the mortgage "and in that way all the encumbrances, liens and defects, and particularly the encumbrance or defect of the outstanding inchoate right of curtesy of William Ginenthal could be released, extinguished and cleared up." Such proceedings were instituted and completed, at a cost to plaintiffs of $387.20.

Plaintiffs seek to recover such sum from defendant, alleging negligence in examining the title and wrongful advice and report on the title.

The "encumbrances, liens or defects in title" other than the mortgage, recited in the complaint, are also set forth in the affidavit of Mr. Bernstein, as follows:

"(a) The criminal recognizance in the amount of $300.00, executed by Rose Ginenthal as bailor to the State of New Jersey, on October 25th, 1928, and recorded in Criminal Recognizance Book at Passaic County Clerk's Office.

"(b) The writ of attachment in the amount of $700.00, issued out of the Passaic County Circuit Court on July 30th, 1929, in an action in which Abraham Zukofsky was plaintiff and Rose Ginenthal was defendant, which writ of attachment was recorded in the Passaic County Clerk's Office in Book C of Attachments, page 128.

"(c) The judgment entered in the Passaic County Circuit Court on August 29th, 1932, in favor of Sigmund Gurtman as plaintiff, and against Rose Ginenthal and William Ginenthal, as defendants, in the total amount of $4,834.40, which judgment was recorded in Book D-2 page 46 of Circuit Court Judgments in Passaic County Clerk's Office.

"(d) The outstanding inchoate right of curtesy of William Ginenthal in and to the equity of redemption of Rose Ginenthal, his wife, a former owner of the real property aforesaid."

It does not appear that the recognizance was set up in the abstract of title, but Mr. Wulster, of counsel for the plaintiffs appearing on the motion, agreed that the lien thereof had been subsequently barred by the statute on limitations. The attachment was set up in the abstract and certificate of title as an exception. The judgment formed a part of the chain of title and was not, therefore, an "encumbrance, lien or defect."

Therefore, the only "defect" with which we are now concerned is the alleged "outstanding inchoate right of curtesy of William Ginenthal."

Title having been acquired by Rose Ginenthal in 1919, her husband's interest or estate in her real property is governed by the law as then applicable, not by subsequent legislation.

The Married Women's act at the time in question (*Comp. Stat., p. 3237, § 14*) provided "nor shall any judgment or decree against [a married woman], in any respect impair or affect the right of the husband in her lands as tenant by the curtesy, after her death."

The interest or estate of the husband could not be reached by his creditors. *Bucci* v. *Popovich,* 93 *N. J. L.* 121; 115 *Atl. Rep.* 95.

Plaintiffs say that since a judgment against the wife could not affect the interest or right of the husband in her separate property, and that since an inchoate right of curtesy could not be reached by the husband's creditors and could not be sold under a judgment against him alone, it follows that such inchoate right of curtesy could not be reached where the judgment was against both husband and wife.

With this the court does not agree.

Plaintiffs' brief depends principally upon *Bucci* v. *Popovich, supra.* That decision deals only with the right of the husband's creditors to reach his interest in his wife's separate real property, separate and apart from her estate therein. Vice-Chancellor Fielder (at *p.* 511), said:

"If the right or interest which a husband has in his wife's separate property, either before or after the birth of issue, is a right or interest which, within the meaning of the Bankruptcy act, he could 'by any means have transferred, or which might have been levied upon and sold under judicial process against him,' then he may convey or encumber it and his judgment creditors may levy on and sell it under execution and thus for the husband's right or estate may be substituted the right or estate of an utter stranger with whom the wife must treat whenever she desires to convey her land or any interest therein."

The learned vice-chancellor's reasoning is sound and pertinent when applied to a judgment against a husband alone or, as in that case, to the trustee in bankruptcy of the husband, but it falls when applied to a situation where the judgment is against both husband and wife and the entire estate and interest of both are sold simultaneously because, in such case, the wife, being also deprived of her estate, need not "treat with" an utter stranger.

The Married Women's act, *supra,* required consent and joinder of a husband to any conveyance or incumbrance of her real estate, at the time in question, but with him joining, she could convey her separate estate and property and with it his inchoate right of curtesy. By such act she could not have, by any separate act of hers resulting in a judgment or decree against her, jeopardized or affected her husband's interest or right in her property.

Where, however, husband and wife jointly incur a liability resulting in judgment against both it is analogous to incumbering her estate with the consent and joinder of her husband.

The cases cited by counsel deal with situations where a severance of the interests of husband and wife would result, substituting a stranger for the husband. My attention has not been directed by either counsel to any decision of this state where the judgment was against both husband and wife.

Plaintiffs' counsel, in their reply memorandum, state that *Bankers' Loan and Investment Co.* v. *Blair (Supreme Court of Appeals of Virginia)*, 99 *Va.* 606; 39 *S. E. Rep.* 231,

involved a judgment against both husband and wife. In their first memorandum they quote from the syllabus of the same case and from page 233 referring to a judgment against the husband and alienation by her in which he united. A reading of the decision by the court, in the reports, shows that the judgment in question was against both husband and wife but was held not to be a lien upon the property of the wife which had been conveyed after the judgment was docketed because the description of the wife in the judgment was such as not to put the purchaser on notice. The court then considered the argument that such judgment was at least a lien upon the husband's estate by the curtesy and held that it was not, as recited by counsel in their original brief. With this there can be no dispute, but the case is not applicable.

Having been referred to no other decision, within or without this state, involving the sale of a wife's separate property on execution against both husband and wife, the court's research reveals the following:

"A valid judgment against both husband and wife may be collected out of the property of both * * * or out of the real estate of which she is the equitable owner, if it is not exempt." 30 *C. J.* 1052, § 820.

The Appellate Court of Indiana in *Sharp* v. *Baker*, 96 *N. E. Rep.* 627, held that, while an execution against the interest of *either* husband or wife who held as tenants by the entirety could not defeat the right of the surviving husband or wife to hold the entire estate, nevertheless "an estate by entireties is subject to sale on execution issued upon a judgment rendered against *both* husband and wife, unless some reason can be found, arising out of the very nature of the estate, which prevents such a result. * * * By their joint deed, they can dispose of their estate, and by their mortgage they can incumber it. Jointly they have the complete ownership of the estate, with full power to control and dispose of it at will, and it is a general rule that property so owned is subject to sale on execution to satisfy a judgment against the owner."

This was followed by the Supreme Court of Michigan in *Sanford* v. *Bertrau,* 169 *N. W. Rep.* 880, and by the Court

of Appeals of Maryland in *Frey* v. *McGaw, 95 Atl. Rep.* 960, and is not in conflict with our own law nor with *Bucci* v. *Popovich, supra.*

We are not now concerned with an estate by the entirety, but the language in the last two sentences above quoted applies with equal force to the separate property of a married woman.

Upon principle, there is no reason why the real estate of the wife and the husband's interest therein should not be subjected to the payment of their joint debts. They own the entire property. The parts cannot be greater than the whole. They may dispose of it or incumber it by their joint action. Each is liable to pay the whole judgment and both are liable to pay any part of it. See 30 *C. J.* 1052, § 820, *note* 626; *Sanford* v. *Bertrau, supra.*

An execution sale on a judgment against the wife alone will not affect the husband's right in her separate property. Married Women's act, *supra.* The husband's right in such property is not subject to sale on a judgment against him alone. *Bucci* v. *Popovich, supra.* The court finds, however, the interest and estate of both husband and wife in the wife's separate property was subject to sale on a judgment against both, there being no statute to the contrary.

If it were otherwise, chaos would result in the world of commerce, where modern women join with their husbands in incurring joint obligations on the strength of the wife's ownership of real property. Creditors would be unable to collect their just debts when the only assets consist of real estate in the wife's name, even though the debt be hers with her husband's co-liability, because inability to reach the husband's right in the property would seriously affect the market value. It would then follow that married men and women would find it increasingly difficult to obtain credit. Certainly where both render themselves liable the husband should not retain his incidental interest in his wife's estate while she loses her legal estate.

The judicial sale under execution on the judgment against Rose Ginenthal and William Ginenthal conveyed all the

right, title and interest of both in her real estate in question. The inchoate right of curtesy of William Ginenthal was not outstanding, and the defendant was not in error in his opinion.

Assuming, however, that the defendant was in error in his opinion, but holding to the contrary, he would not be liable for such error in the absence of negligence. The affidavits do not present a jury question on this but rather show conclusively an absence of negligence. The judgment in question was set up as part of the chain of title and the defendant certified that in his opinion the title was good except for the mortgage and writ of attachment.

Our Court of Errors and Appeals, in *Morris* v. *Muller*, 113 *N. J. L.* 46; 172 *Atl. Rep.* 63, held:

"It is equally well settled that no man, whether skilled or unskilled, undertakes that the task he assumes shall be performed successfully and without fault or error; he undertakes for good faith and integrity but not for infallibility and he is liable to his employer for negligence, bad faith, or dishonesty but not for loss consequent upon mere error of judgment. 3 *Cooley Torts* (*4th ed.*) \*472. A lawyer, without express agreement, is not an insurer. He is not a guarantor that the instrument he will draft will be held valid by the court of last resort. He is not answerable for an error of judgment in the conduct of a case or for every mistake which may occur in practice."

In so far as the complaint alleges negligence it is sham. In the other particulars above discussed it is insufficient in law. The complaint will be stricken.

An order may be presented accordingly.