**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2297-15T4

ANTONIO RUSSO,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

PPN TITLE AGENCY, LLC,

    Defendant/Third-Party Plaintiff-
    Respondent/Cross-Appellant,

v.

JOHN LUCIANO, d/b/a
RYAN EXPRESS ABSTRACTS,

    Third-Party Defendant.

_____

        Argued May 24, 2017 — Decided July 20, 2017

        Before Judges Simonelli, Gooden Brown and
        Farrington.

        On appeal from the Superior Court of New
        Jersey, Law Division, Passaic County, Docket
        No. L-3475-14.

        David J. Zwerling argued the cause for
        appellant/cross-respondent (Zwerling Law
        Group L.L.C., attorneys; Mr. Zwerling, on the
        briefs).

Russell M. Finestein argued the cause for respondent/cross-appellant (Finestein & Malloy, L.L.C., attorneys; Mr. Finestein and Corrine LaCroix Tighe, on the brief).

Michael J. Fasano argued the cause for amicus curiae New Jersey Land Title Association (Davison, Eastman & Muñoz, P.A., attorneys; Mr. Fasano, on the brief).

PER CURIAM

Plaintiff Antonio Russo appeals from the January 11, 2016 Law Division order, which granted summary judgment to defendant PPN Title Agency, LLC (PPN) and denied his cross-motion for summary judgment. PPN cross-appeals from the September 8, 2015 order, which denied its motion to dismiss for failure to serve an affidavit of merit in compliance with the Affidavit of Merit (AOM) statute, N.J.S.A. 2A:53A-27. Because we conclude that summary judgment was properly granted to PPN, we do not address PPN's cross-appeal.

I.

We derive the following facts from evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to the non-moving party. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)).

Chicago Title Insurance Company (Chicago Title) entered into an agency contract with PPN, which permitted PPN to validate,

countersign, issue, and deliver title commitments, title insurance policies, and endorsements on behalf of Chicago Title.

Plaintiff contracted to purchase property in Hawthorne from Joseph Putz, III for $275,000. In connection with the transaction, plaintiff's attorney ordered a title binder/commitment[1] from PPN. Other than the title commitment, plaintiff did not order, and PPN did not issue or deliver, a title search or title abstract to plaintiff or his attorney.

In conjunction with its obligation to issue the title commitment and title insurance policy, PPN contracted with an independent contractor, John Luciano, d/b/a Ryan Express Abstracts, to conduct a title search, including a search for outstanding mortgages. Luciano performed a title search and prepared a title report, which indicated there were no mortgages on the property. PPN used the results of Luciano's search to prepare a title insurance commitment. PPN, as agent for Chicago Title, issued a title commitment to plaintiff. The closing occurred on December 17, 2012. At the closing, Putz provided a notarized affidavit of title, stating there were no open mortgages encumbering the property.

---

[1]   A title binder is the same as a title commitment. Palomar, Title Insurance Law, Vol. I, § 5.29 (2015).

PPN, as agent for Chicago Title, issued a title insurance policy insuring title to the property for $275,000. The policy insured "against loss or damage, not exceeding the [a]mount of insurance, sustained . . . by reason of . . . [a]ny defect in lien or encumbrance on the [t]itle." The policy contained the following limits on liability provisions:

8. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i) the Amount of Insurance; or

(ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

. . . .

15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between [the parties]. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the [t]itle or by

> any action asserting such claim shall be restricted to this policy.

Plaintiff renovated the property, and in 2013, contracted to sell it for $534,900. A title search obtained by the purchaser revealed the property was encumbered by a mortgage executed by Putz on August 23, 2006, and recorded in the Passaic County Clerk's Office on September 26, 2006, and a lis pendens. The mortgage had an outstanding balance of $341,017.76 as of the date of the closing in this transaction. Plaintiff made a claim to Chicago Title, which paid him the full title insurance policy amount of $275,000, leaving him liable for $66,017.76 to pay off the open mortgage.

Plaintiff filed a complaint against PPN, alleging negligence in performing the title search and preparing and delivering an abstract of title, and breach of contract. PPN filed a motion to dismiss the complaint with prejudice for failure to serve an AOM, which the motion judge denied.

The parties subsequently filed motions for summary judgment. The motion judge granted PPN's motion, finding that PPN acted solely as an agent for Chicago Title and conducted and issued a title insurance commitment and title insurance policy, not a title search or title abstract. Citing Walker Rogge, Inc. v. Chelsea Title & Guaranty Co., 116 N.J. 517 (1989), the judge concluded that the title insurance policy limited the liability of Chicago

Title and its agent, PPN, to $275,000, and plaintiff could not circumvent the limitations by suing in negligence or suing the insurance company's agent for damages that exceed the policy limits. This appeal and cross-appeal followed.

## II.

"[A] title company's liability is limited to the policy and that company is not liable in tort for negligence in searching records." Id. at 535. "If, however, the title company agrees to conduct a search and provide the insured with an abstract of title in addition to the policy, it may expose itself to liability for negligence as a title searcher in addition to its liability under the policy." Id. at 535 (citations omitted).

Plaintiff contends that PPN is liable in negligence for damages exceeding the policy limits because it conducted a title search and provided an abstract of title. PPN counters that plaintiff never ordered, and PPN never provided, a title search or abstract of title. Rather, plaintiff ordered a title commitment, and PPN conducted the title search for its own benefit in conjunction with its obligation to issue the title commitment and title insurance policy. Amicus, New Jersey Land Title Association (NJLTA), adds that the Walker Rogge exception does not apply here because plaintiff ordered and received a title commitment, which is not an abstract of title, and a negligent

title search cannot be the basis of suit to recover damages beyond the policy limits.

We review a ruling on a motion for summary judgment de novo, applying the same standard governing the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (citation omitted). Thus, we consider, as the motion judge did, "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (citation omitted). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). For mixed questions of law and fact, we give deference to the supported factual findings of the trial court, but review de novo the court's application of any legal rules to such factual findings. State v. Pierre, 223 N.J. 560, 576-77 (2015) (citations omitted). Applying the above standards, we conclude that summary judgment was properly granted to PPN.

An abstract of title is not the same as a title commitment. See Walker Rogge, supra, 116 N.J. at 535. An abstract of title traces the chain of title back at least 60 years, where

> the searcher may discover that the ancestor at the beginning of the 60 year period held the property, not by a deed, but under a will. The practice in such cases is to trace the title back further, until a conveyance by deed into the ancestor is found. This may necessitate searching back to the original proprietors. The same practice is followed when at the start of the 60 year period a conveyance by a sheriff's deed under a court order is found to be the basis of the ancestor's title. The search is continued until a conveyance by deed is found.
>
> [Lieberman, New Jersey Practice, Abstracts and Titles, Vol. 13A, § 1642 (1963).]

Additionally, the sixty-year or more title history must be outlined in a narrative report so as to enable the reviewer to determine how title had actually passed with commentaries on the significant events in the chain of title. Id. at § 1647. The abstract of title must also contain a narrative history of prior liens and deeds, and must contain the dates upon which those liens were extinguished. Ibid.

Individuals, usually attorneys, examined recorded documents, prepared abstract of title histories relating to a property, and gave an opinion about the quality of title. Hopper v. Gurtman, 17 N.J. Misc. 289, 291 (Sup. Ct. 1939), aff'd, 126 N.J.L. 263 (E.

& A. 1941).  If the attorney made a mistake in preparing the abstract or in the opinion on title, he or she could be held liable if found negligent.  <u>Jacobsen v. Peterson</u>, 91 <u>N.J.L.</u> 404, 405 (Sup. Ct.), <u>aff'd o.b.</u>, 92 <u>N.J.L.</u> 631 (E. & A. 1918) (citation omitted).

Unlike an abstract of title, a title commitment is a contractual offer made to a potential real estate purchaser that sets forth "all the title insurer's requirements for issuing a [title insurance] policy and the terms of coverage the title insurer is offering, including all known special exceptions, standard exclusions and conditions to coverage."  Palomar, <u>Title Insurance Law</u>, Vol. I, § 5.29.  The title commitment "binds" or "commits" the insurer to issue a title insurance policy if certain conditions are met.  <u>Ibid.</u>

In issuing a title commitment, title insurers are obligated to conduct "a reasonable examination of the title" so as to make "a determination of insurability of title in accordance with sound underwriting practices for title insurance companies."  <u>N.J.S.A.</u> 17:46B-9.  Although "an insured expects that a title company will conduct a reasonable title examination, the relationship between the company and the insured is essentially contractual.  The end result of the relationship between the title company and the insured is the issuance of the [title insurance] policy."  <u>Walker</u>

Rogge, supra, 116 N.J. at 540 (citation omitted). "The expectation of the insured that the insurer will conduct a reasonable search does not necessarily mean that the insurer may not limit its liability in the title commitment and policy." Id. at 541.

The document PPN provided to plaintiff was not, and cannot be construed as, an abstract of title. The document made no mention of and bore no resemblance whatsoever to an abstract of title. The document clearly was a title commitment that set forth the type of title insurance policy that would be issued, the requirements for issuing the policy, the special exceptions to the proposed policy, and the terms of coverage. Because PPN did not provide an abstract of title, it cannot be held liable in tort for negligence for the defective title search. Id. at 535.

Furthermore, plaintiff did not request, and PPN did not provide, a title search or abstract of title. PPN conducted the title search for its own benefit in conjunction with its obligation to issue the title commitment and policy. Id. at 536. Even though plaintiff was billed for a title search, his remedy against PPN lay in contract, not in negligence. Ibid. No matter how much plaintiff tries to obfuscate the issue and conflate all of the terminology, he was not provided a title search or abstract of title that would confer liability upon PPN for negligence. Ibid.

10

III.

Plaintiff contends that the motion judge erred in concluding that PPN stands in the same legal relationship to him as Chicago Title.[2] This contention lacks merit.

As a general matter, "[a] corporation acts only through its agents." African Bio-Botanica, Inc. v. Leiner, 264 N.J. Super. 359, 363 (App. Div.), certif. denied, 134 N.J. 480 (1993). Thus, liability is precluded because "an agent who contracts on behalf of a fully disclosed principal is not personally liable on the contract." Id. at 363-64 (citations omitted). This is the case here. PPN acted as Chicago Title's agent in the transaction, and the title commitment and policy were issued in the name of the principal, Chicago Title, not the agent, PPN. Accordingly, as a matter of law, no breach of contract action can be brought against PPN.

In addition, an action in tort cannot be brought against a principal's agent. Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 315 (2002) "Notwithstanding the language of the [plaintiff's] complaint sounding in tort, the complaint essentially arises in

_____

[2] Plaintiff cites no binding authority and merely cites to an unpublished opinion to support this argument. However, unpublished opinions do not constitute precedent and are not binding on us. Trinity Cemetery Ass'n v. Twp. of Wall, 170 N.J. 39, 48 (2001).

contract rather than tort and is governed by the contract."  Id. at 309 (citing Walker Rogge, supra, 116 N.J. at 540 (holding that negligent performance allegations were merely a form of breach of contract action)).  "Under New Jersey law, a tort remedy [against an agent] does not arise from a contractual relationship unless the breaching [agent] owes an independent duty imposed by law." Ibid. (citations omitted).

PPN did not breach any duty to plaintiff that was independent of the title insurance policy.  The policy gave rise to the duty of title searching and insured "against loss or damage, not exceeding the [a]mount of [i]nsurance, sustained by reasons of . . . any defect in or lien encumbrance on the [t]itle."  Thus, the policy specifically insured against the possibility that a negligent search might give rise to an insurable loss.  Plaintiff cannot sue PPN in tort for the very acts covered by the policy. Plaintiff has no cause of action against PPN in tort because PPN's duties, and alleged breach thereof, were specifically resolved by the terms of the policy.  The remedy available to plaintiff was for breach of contract.  Plaintiff received the full proceeds of the policy to compensate him for the negligent title search.  He is entitled to nothing more.

Having concluded that the grant of summary judgment to PPN was proper, we need not address PPN's cross-appeal.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION