600 A.2d 173

DIOCESE OF METUCHEN, PLAINTIFF, v. TOWNSHIP OF
PISCATAWAY AND THE TOWNSHIP COUNCIL OF
PISCATAWAY, DEFENDANTS.

Superior Court of New Jersey
Law Division, Middlesex County

Decided September 13, 1991.

526

*Thomas Sharlow, Jr.* for plaintiff.
*Philip Paley* for defendant.

BERMAN, J.S.C.

While at first blush, this action by complaint in lieu of prerogative writ may appear jurisprudentially esoteric, at least two issues are of seeming novelty.

Does the Department of Community Affairs, or the local municipality, have jurisdiction of off-street parking requirements for mausoleums or is the jurisdiction shared?

If a setback restriction, one part of a comprehensive zoning scheme, is invalidated must an otherwise valid height restriction be invalidated because of its interrelationship to the setback?

These issues arise in the following manner.

### Factual History.

Plaintiff, Diocese of Metuchen (hereinafter referred to as "diocese"), is a non-profit religious corporation of the State of New Jersey, which owns and operates Resurrection Cemetery in the Township of Piscataway. The cemetery consists of 105.7 acres and is situated in the R–15 zone.

Defendant, Township of Piscataway (hereinafter referred to as "township"), is a municipal corporation in the State of New Jersey, and the township council (hereinafter referred to as "council"), is its governing body.

In the fall of 1990, representatives of the diocese met with township officials to discuss their plans for the construction of a mausoleum to be built within the cemetery. The testimony as to the substance of those meetings was somewhat brief and vague. However, the result of those meetings was clear and undenied. As a result of township concerns regarding a proposed mausoleum, the township introduced Ordinance 91–3 on January 15, 1991; and adopted it February 19, 1991, which substantially impacted upon the diocese's property. For the facility of all concerned, and because of the significance of a number of sections of that law, all pertinent parts are set forth:

A. Section 21–501, "Schedule of general requirements", hereby amended by adding the following conditional use permitted within RR–1 Zones: "number 8. Cemeteries (see Section 21–1013)."

B. Section 21–1013 shall be added to provide as follows:

Cemeteries—Cemeteries shall be permitted in the R, R –M, BP –I, and BP –II Zones, subject to the following conditions;

a. Minimum lot dimensions:

| Area | Lot Width | Lot Depth | Lot Frontage |
|---|---|---|---|
| 15 acres | 800 feet | 800 feet | 800 feet |

b. Minimum setbacks:

| Front | Side | Rear |
|---|---|---|
| PB 300 feet | 300 feet | 300 feet |
| AB 300 feet | 300 feet | 300 feet |

c. Maximum lot coverage—20% for all structures

d. Maximum building height

PB 35 feet

AB 18 feet

e. Primary access to the property shall be by other than a local street, as defined in the Land Subdivision Ordinance of the Township of Piscataway.

f. One parking space shall be provided for every 300 square feet of office space plus one (1) space for every 500 square feet of garage/maintenance area, plus 15 spaces for any area designated as proposed mausoleum area. In addition to the 15 spaces required for any mausoleum, a loading and unloading zone of two additional spaces may be required as reserved spaces at the discretion of the Planning Board. [Piscataway, N.J.Rev.Ord.C. 21, § 21–1013 (1990)]

The ordinance is anomalous in a number of respects, though concededly these anomalies may be neither fatal to the validity of the ordinance, nor dispositive of the issues raised. However, if for nothing other than guidance for the parties, certain observations are compelled.

First, the ordinance states that cemeteries "shall be permitted in the R, R–M, BP–I, BP–II Zones...." Ordinance No. 78–27 of the revised zoning ordinances of the township, indicates that there is an RR–1 zone (rural residential), and the following delineated residential zones: R–20, R–20A, R–15, R–15A, R–10, R–10A, R–7.5, R–M. There is no "R" zone.

Counsel for defendant offered to stipulate that "R" must mean R–15, the zone in which plaintiff's property is situated, because there was no intention to rezone plaintiff's property. However, the township planner, the township's only witness, Lenore Slothower, testified that "R" was not intended to reflect R–15, but was intended to reflect RR–1, thereby embracing *all* residential zones. There is, however, one demonstrable fallacy in her conclusion. As stated, the ordinance permitted cemeteries in the "R, R–M, BP–1, BP–2" zones. If "R" was intended to

include all residential zones, then the inclusion of R–M would be needless surplusage.

Under either interpretation, a mausoleum would be allowable in the R–15 zone (embracing the diocese's property) provided that the applicant complied with the enumerated conditions. This precipitated the second anomaly.

Counsel for defendant opined that the planning board had jurisdiction over any application for a mausoleum by virtue of this ordinance. The township planner testified that jurisdiction lies with the zoning board of adjustment by way of a conditional use application.

Third, cemeteries remain subject to a 300–foot setback limitation. Both counsel for defendant, as well as Slothower, stated there could be in-ground interment within the setbacks, but no construction of a mausoleum within those setbacks. Their conclusion was that the council only intended a setback requirement for a mausoleum, but not traditional in-ground burials. While this may well reflect the council's intent, it raises another ambiguity. As stated hereinabove, cemeteries are expressly subject to certain enumerated conditions, set forth as "a"—"f." Defendant, by way of example, stated that cemeteries are subject to condition "a" (minimal lot dimensions). If condition "a" is applicable to a cemetery and condition "b" is not applicable, the ordinance starts to resemble a menu more than a legislative declaration. If (for example) there is no mausoleum, is condition "e" (access) applicable to a cemetery containing only in-ground interment?

Again, while counsel and the township planner may well accurately represent the Council's legislative intent, their recitation raises another dilemma. As plaintiff's planner and expert witness (Robert Rosa) testified, if the setbacks do not regulate in-ground interment, then what is to stop a cemetery from in-ground burials, and their attendant tombstones or monuments from being set right up to the property line?

Fourth, condition "f" of Ordinance 91-3 requires "15 spaces for any area designated as proposed mausoleum area." Are these 15 spaces inclusive or exclusive of handicapped parking?

Finally, the ordinance states that it "shall take effect twenty (20) days after the *first* publication thereof, and after final passage in the manner provided by law." Emphasis supplied. Did not the council in fact mean the second publication which occurred *after* the ordinance was adopted, since the first publication was more than 20 days *before* adoption. If this final section did not conflict with *N.J.S.A.* 40:49-2, it undoubtedly conflicted with the township's own revised general ordinances, specifically § 2-3.3 *(effective date)* which states:

> *Effective Date.* No ordinance, other than the local budget ordinance, shall take effect less than 20 days after its final passage by the council and approval by the mayor, where such approval is required. The council may adopt a resolution declaring an emergency which requires at least two-thirds of all members of the council to vote in favor of the resolution; in which case the *resolution* may take effect immediately. [*Piscataway, N.J.Rev.Ord.* § 2-3.3 (1990); emphasis supplied]

Clearly, the word "resolution" must be "ordinance."

### *Off-Street Parking.*

*N.J.S.A.* 8A:3-14.1 provides:

**Construction of public mausoleums . . .; rules and regulations; preemption of local ordinances.**

The Department of Community Affairs shall within 90 days of the effective date of this act promulgate rules and regulations regulating the construction of public mausoleums or columbariums. To the extent applicable, such rules and regulations shall be the standards adopted in the subcodes of the Uniform Construction Code, or other national model code or standard. If the commissioner shall, after a public hearing, determine that such do not adequately protect the public interest, the commissioner may promulgate additional standards. *Any local ordinance heretofore or hereafter enacted regulating the construction of said structures shall be of no force or effect; provided, however, that any municipality may enact zoning ordinances which provide for reasonable height and setback requirements in keeping with such standards established for property immediately abutting a cemetery.* Any rule or regulation promulgated by the department contrary to the provisions of such zoning ordinance shall not be enforceable within said municipality. [Emphasis supplied]

One can argue that since the Legislature only permitted a municipality to regulate height and setback requirements, inferentially the Legislature prohibited a municipality from regulating off-street parking requirements.

However, contrast that to *N.J.S.A.* 40:55D–65d which states:

Establish, for particular uses or classes of uses, reasonable standards of performance and standards for the provision of adequate physical improvements including, but not limited to, *off-street parking* and loading areas, marginal access roads and roadways, other circulation facilities and water, sewerage and drainage facilities; provided that section 41 of this act shall apply to such improvements. [Emphasis supplied]

■ Thus, a township by inference in Title 8A is prohibited from regulating off-street parking; but is given specific power under Title 40. This court concludes that the right to regulate off-street parking was reserved to the township, provided, of course, it satisfied all other laws which will be hereafter discussed, and provided it was reasonable.

As Judge Michels stated: "[I]t is well-established that a specific statutory provision dealing with a particular subject prevails over a general statute on the same subject." *Zoning Bd. of Adj. v. Service Elec. Cable T.V.*, 198 *N.J.Super.* 370, 381, 487 *A.*2d 331 (App.Div.1985), and the cases cited therein. It is inconceivable that the Legislature intended to transfer the governance of off-street parking from a local municipality to the state Department of Community Affairs (DCA) simply because the Legislature, in Title 8A subjected mausoleum construction to DCA approval. The two statutes should be read together, and the above conclusion seems to be the most plausible. *Reinhart v. Miller*, 208 *N.J.Super.* 314, 316, 505 *A.*2d 247 (Law Div.1985); *In re: Salaries Probation Officers Hudson Cty.*, 158 *N.J.Super.* 363, 386 *A.*2d 403 (App.Div.1978).

■ Notwithstanding, for the reasons hereafter expressed, condition "f" of Ordinance 91–3, proposing to require "15 spaces for any area designated for any mausoleum area" must be invalidated.

Before expounding on the basis for this conclusion, this court is not at all unmindful of the admonition of Chief Justice Weintraub, wherein he stated:

[T]he zoning statute delegates legislative power to local government. The judiciary of course cannot exercise that power directly, nor indirectly by measuring the policy determination by a judge's private view. The wisdom of the legislative action is reviewable only at the polls. The judicial role is tightly circumscribed. We may act only if the presumption in favor of the ordinance is overcome by a clear showing that it is arbitrary or unreasonable. [*Kozesnik v. Montgomery Township*, 24 *N.J.* 154, 167 [131 *A.2d* 1] (1957). *See also* Justice O'Hern's opinion in *Zilinsky v. Zoning Bd. of Adj.*, 105 *N.J.* 363 [521 *A.2d* 841] (1987) ].

This test is undoubtedly shared by substantially all other jurisdictions. Presiding Judge Gillis, of the Michigan Court of Appeals, stated: "[W]e do not sit as a super-zoning board and that in order to invalidate an ordinance the challenging party must first overcome the presumption of validity with such each ordinance comes clothed...." *Sisters of Bon Secours Hosp. v. City of Grosse Pointe*, 8 *Mich.App.* 342, 154 *N.W.2d* 644, 649 (Ct.App.1967). Judge Gillis further stated: "[t]he power granted municipalities to enact zoning ordinances is at all times limited by the word 'reasonable.'" 154 *N.W.2d* at 650.

This court is satisfied from the testimony of plaintiff's acknowledged expert (Robert Rosa), the decisional law, and Piscataway's own revised general ordinances, that subsection "f" setting a "15 spaces" parking regulation is unreasonable.

██ One observes almost reflexively that the parking allotment of 15 spaces is the same regardless of the size of the area dedicated to a mausoleum, regardless of the square footage of the mausoleum or the number of crypts. The 15–space requirement is not based upon any criteria or standards whatsoever. See the opinion of Ohio Supreme Court Judge Herbert in *State ex rel. Assoc. Land and Invest. Corp. v. City of Lyndhurst*, 154 *N.E.2d* 435 (Ohio Sup.Ct.1958); *See also Camparato v. Knauf*, 305 *N.Y.S.2d* 640, 61 *Misc.2d* 245 (1969), *New Orleans v. Leeco*, 226 *La.* 335, 76 *So.2d* 387 (1954), *Miami Beach v. 100 Lincoln Road*, 214 *So.2d* 39 (Fla.App.1968). Off-street parking

ordinances must be clear enough on the face of the statute to guide the officials administering the regulations.

For example, in *State v. City of Lyndhurst, supra,* the Supreme Court of Ohio invalidated an off-street parking ordinance which stated, "buildings should provide parking spaces reasonably adequate for commercial vehicles necessary to carry on business for occupants of premises." 154 *N.E.*2d at 441. The court held that the ordinance was void because it did not contain sufficient standards to guide the tribunal.

In order to pass constitutional muster, the township must provide a formula to determine the appropriate amount of off-street parking for particular uses. Once a formula is given, courts generally will defer to the formula, so long as it reasonably ensures the free flow of traffic. A typically accepted formula for off-street parking was given in *New Orleans v. Leeco, Inc., supra,* which held that a provision requiring movie theaters to provide parking by following a ratio of one parking space per eight seats was constitutionally permissible.

Another example of a constitutionally sound off-street parking formula was upheld in *Sisters of Bon Secours Hosp. v. Grosse Pointe, supra.* In *Bon Secours,* the court upheld a zoning ordinance requiring hospitals to have one off-street parking space per patient bed and one space for each five staff positions. The rationale was that the ordinance "bore a substantial relation to lessening congestion and traffic in the public streets as well as protecting residential owners throughout the city from the possibility of many cars parking at their curbs." 154 *N.W.*2d at 652.

Instead of providing a formula to determine off-street parking spaces in front of mausoleums, Ordinance No. 91–3 requires "15 spaces for any area designated a proposed mausoleum area." *Piscataway, N.J.Rev.* Ord. *c.* 21, § 21–1013 (1990). Blanket space requirements do not set forth sufficient standards for this court. In *J.D. Constr. Corp. v. Board of Adjustment,* 119 *N.J.Super.* 140 (Law Div.1972), the Superior

Court of New Jersey struck down the Township of Freehold's zoning ordinance, which limited four or more vehicles to a side or rear yard to apartment complexes. The court found that the number of allotted spaces was invalid and unconstitutional. Similarly, the township does not provide any defensible rationale for choosing 15 spaces.

Finally, this allotment of 15 spaces does not even comport with Piscataway's own statutory mandate. In Piscataway's Municipal Code § 24–702.2(c), the township clearly provides individual formulas for each specific use. For example, funeral homes and mortuaries must provide ten parking spaces, plus one space for each 50 square feet of floor area. *Piscataway, N.J.Rev.Ord.* §§ 22–702.2(c) (1990). Thus, Ordinance No. 91–3 could have and perhaps should have included a space per size of mausoleum ratio to conform to existing statutory mandates.

While mausoleums were not originally enumerated, unenumerated structures are addressed in §§ 22–702.2(d). Section 22–702.2(d) requires: "In all questionable or doubtful cases, or **for uses not enumerated,** the municipal agency shall determine the required number of spaces, utilizing as a standard the requirements for the uses which are specifically enumerated." Emphasis supplied. Thus, the 15–space requirement does not conform to Piscataway's own ordinance that a formula be employed from a previously enumerated section to help determine the appropriate number of spaces for an unenumerated section.

In light of the foregoing reasons, the 15-lot parking requirement shall be stricken because it is an arbitrary and capricious exercise of zoning power.

### *Setback/Height.*

■ The minimum setbacks of 300 feet, which includes front, side, and rear for both principal and accessory buildings, violates *N.J.S.A.* 8A:3–14.1. Furthermore, even in the absence of

that legislative proscription, the inexorable conclusion is that these setbacks are arbitrary, capricious, and unreasonable.

As set forth hereinabove, *N.J.S.A.* 8A:3–14.1 allows the municipality to enact zoning ordinances regulating the height and setback for mausoleums, provided that these setbacks are "in keeping with such standards established for property immediately abutting a cemetery."

In no other zone and for no other use in the Township of Piscataway are there setback requirements in excess of 100 feet. Even the setback requirements for the properties contiguous to the diocese's property are substantially less than that.

The properties contiguous to plaintiff's fall in one of four zones: R–15 (the same as plaintiff's), R–15A, R–20, and BP1. There is no front setback in any of these four zones for either a principal or accessory building, in excess of 75 feet. There is no rear setback in any of these zones, for either a principal or accessory building, in excess of 80 feet. There is no side setback, in any of these zones for either a principal or accessory building, in excess of 25 feet.

Sustaining the subject 300–foot setback (front, rear, and side) would effectively reduce the requirement that the height and setback be "in keeping with such standards established for property immediately abutting a cemetery" to a statutory adenoid.

A review of the credible testimony compels the same result. Robert Rosa, a landscape architect and planner, whose expertise was acknowledged, testified that no zone for any use in Piscataway contained a setback exceeding 100 feet; and that in eight of the nine towns bordering Piscataway, none had any setback for any use in excess of 100 feet.[1] And in the ninth municipality, Franklin Township, there was one zone containing a 150 foot setback.

[1]Those municipalities being New Brunswick, Highland Park, Edison, Bound-Brook, Middlesex, Dunnellen, Plainfield, and South Plainfield.

Thus, other zones in Piscataway containing more intense uses effectively had lesser setbacks.

Robert Hyer, an independent fee appraiser whose expertise was also acknowledged by defendant, testified that he has never seen a zone containing setbacks for front, side, and rear yards of 300 feet, with a singular exception of once observing a 300-foot setback requirement for a race track.

Plaintiff's architect, Patrick Fly, who is licensed in 40 states and who specializes in the design and planning of cemeteries and mausoleums, testified that he has never seen a setback for a mausoleum in excess of 100 feet.

Paul Berg, Jr., plaintiff's land surveyor, testified, without refutation, as to how these setback requirements would impact on a 15-acre lot, the minimum lot area for construction of a mausoleum. Superimposing a 300-foot front, side, and rear setback requirement on a 15-acre lot, containing the ordinance-required lot width, depth and frontage of 800 feet, would render 93.4% of the lot nonusable, except theoretically for a road network and landscaping. Stated in other terms, of 15 acres in the hypothetical lot, less than one acre would be buildable. This virtual confiscation of private property simply cannot be sanctioned. *AMG Assoc. v. Township of Springfield,* 65 *N.J.* 101, 111–112, 319 *A.*2d 705 (1974).

Parenthetically, Ordinance 91-3, in condition "c," allows a maximum lot coverage of 20% for all structures. However, as is unfortunately obvious, that 20% allowance or limitation is of absolutely no moment when applying the 300-foot setbacks to a 15-acre lot, since it leaves only 6.6% of the lot effectively usable:

For these reasons, the setback restrictions are invalidated.

Having nullified the parking and the setback restrictions, must the remainder of the ordinance fail? Specifically, must the height restriction be invalidated?

The absence of a "severability clause" in the ordinance is not dispositive. The decisive factor in determining severability of a statute is to determine whether the Legislature intended the statute to stand as whole when one portion of the enactment is voided by the court. *State v. Lanza,* 27 *N.J.* 516, 143 *A.*2d 571 (1958). This court must look to legislative intent to determine whether two clauses "are so intimately connected and mutually dependent as reasonably to sustain the hypothesis that the Legislature would not have adopted the one without the other." *Id.* at 528, 143 *A.*2d 571. Thus, this court's task is to determine whether it was the township's intent to design the ordinance in a way that height, setback, parking, and all other mausoleum requirements, are so intimately linked that one section has no relevance or meaning without the other.

It is abundantly clear to this court, and virtually acknowledged by the township's own witness (their planner), that this ordinance was adopted primarily to impose a setback requirement for a mausoleum. Condition "b", the setbacks, have been invalidated; condition "c" is effectively surplusage as related to a 15–acre lot based upon the observations set forth hereinabove. Condition "d" (maximum building height) is simply the carry over from the prior height requirements and reflects no change. Condition "f" (parking) has been at least partially nullified.

Counsel for defendant candidly acknowledged in a colloquy with the court that if the parking and setbacks requirements were ignored for the purposes of argument, then the township never would have passed an ordinance simply repeating the height requirements and establishing minimum lot dimensions and maximum lot coverage.

In view of the foregoing, Ordinance 91–3 is declared invalid in its entirety for this and other reasons premised upon the testimony presented to the court. Robert Rosa testified that height and setback are directly related (at least in this case, if not in all cases); and defendant's planner acknowledged clearly

and repeatedly that the height requirement was a function she considered in the equation producing the 300–foot setbacks.

Thus, though this court is invalidating the remainder of the ordinance, including the height limitations, it is doing so based upon the ordinance being non-severable. This court is not concluding that any portion of the ordinance is arbitrary, capricious or unreasonable, other than the parking requirements for proposed mausoleum areas and the minimum setbacks for the reasons set forth herein.

Counsel for plaintiff shall submit the appropriate form of order.