784 A.2d 52 (2001)
170 N.J. 39
TRINITY CEMETERY ASSOCIATION, INC., Plaintiff-Respondent,
v.
The TOWNSHIP OF WALL (incorrectly designated as Mayor and Council of Wall, Monmouth County, New Jersey), Defendant-Appellant.
Supreme Court of New Jersey.
Argued October 11, 2000.
Decided November 8, 2001.
William J. Wolf argued the cause for appellant (Bathgate, Wegener & Wolf, attorneys, Lakewood; Mr. Wolf and Michael M. DiCicco, on the briefs).
William Harla argued the cause for respondent (DeCotiis, Fitzpatrick, Gluck, Hayden & Cole, Teaneck, and Katz & Dougherty, Lawrenceville, attorneys, Mr. Harla and George T. Dougherty).
Nancy Costello Miller, Deputy Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey (John J. Farmer, Jr., Trenton, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel).
*53 PER CURIAM.
This appeal presents two principal issues for resolution. The first is whether a municipality is preempted by the New Jersey Cemetery Act, N.J.S.A. 8A:1-1 to 12-6 (Cemetery Act), from adopting an ordinance rezoning property from cemetery to residential use after the New Jersey Cemetery Board has issued a certificate of authority permitting the property to be used for cemetery purposes subject only to the recording of the deed, which occurred after the municipal ordinance was introduced but prior to its adoption. The second issue is whether the allegations of deception asserted by the municipality, if established at a plenary trial, would constitute a basis for invalidating the municipality's initial action by ordinance that rezoned the property for cemetery use.
The Appellate Division held that the Cemetery Act preempted the municipality's attempt to rezone the property back to residential use. That court did not address the deception issue.
The Appellate Division summarized the facts that are pertinent to our disposition:
Plaintiff, Trinity Cemetery Association, Inc. ("Trinity"), commenced an action in lieu of prerogative writs challenging the enactment of a zoning ordinance by defendant, the Township of Wall ("Township"), rezoning Trinity's property from cemetery use to residential use. On July 18, 1997, Trinity moved for summary judgment. Following oral argument, the motion judge granted summary judgment on the ground that once Trinity's property was dedicated "for cemetery purposes," N.J.S.A. 8A:6-7, the New Jersey Cemetery Act, N.J.S.A. 8A:1-1 to12-6, preempted the Township's zoning ordinance. We affirm.
Trinity owns property located in the Township consisting of six and one-half acres of vacant, undeveloped land. Prior to November 1995, the land was zoned as residential. In 1995, Trinity's predecessor in title sought to have the Township rezone the property for cemetery purposes. In connection with efforts to rezone the property, the prior owner submitted a proposal to the Township showing a pastoral, park-like cemetery setting with sprawling green, no headstones and a stone walkway encircling the property.
On November 5, 1995, the Township adopted Ordinance 25 1995, creating a cemetery zone that included the Trinity property. The zone permitted mausoleums as an accessory use. Subsequently, on July 17, 1996, the Township adopted a resolution pursuant to N.J.S.A. 8A:6-5, consenting to the establishment of a cemetery on Trinity's property. The resolution was "contingent upon any other approvals necessary from the State of New Jersey and local approving agencies."
Following the adoption of the Township resolution, on December 5, 1996, the New Jersey Cemetery Board ("Cemetery Board") issued a certificate of authority to Trinity to operate as a cemetery. See N.J.S.A. 8A:3-2. The Cemetery Board notified Trinity that the certificate of authority would "be in full effect" once Trinity acquired title to the property and "a deed [was] appropriately filed." Although Trinity acquired title on January 15, 1997, the deed was not recorded until April 28, 1997.
In the interim, on February 20, 1997, Trinity submitted a site plan application to the Township planning board for its cemetery property. The plan included mausoleums, with the property surrounded by a stone wall. When the Township governing body learned of Trinity's site plan application, it introduced *54 Ordinance 10-1997 to rezone Trinity's property from cemetery use to residential use. The Township took this action because it believed that it had been deceived by Trinity's predecessor in title by the proposal of a pastoral cemetery development without mausoleums. Following its introduction on April 23, 1997, the Ordinance was forwarded to the Township planning board for review and recommendation as required by N.J.S.A. 40:55D-64. On May 5, 1997, the Township planning board recommended the approval of Ordinance 10-1997, and the Township adopted the ordinance on May 14, 1997. Trinity never received approval of its site plan application.
Trinity subsequently commenced this action challenging the adoption of Ordinance 10-1997. It then moved for summary judgment, arguing that the Cemetery Act preempted the Township's enactment of Ordinance 10-1997.

[Id. at 295, 739 A.2d 409.]
We are in agreement with the Appellate Division's conclusion that the Township was preempted by the Cemetery Act from adopting an ordinance rezoning the property to residential use after the Cemetery Board issued a certificate of authority, the deed to the property having been recorded before the Township's ordinance was finally adopted. The court observed:
The Cemetery Board issued a certificate of authority to Trinity with the condition that it acquire property and "file the deed." Trinity complied with that condition on April 28, 1997. Because these events occurred before the enactment of Ordinance 10-1997, the Township was preempted from rezoning Trinity's land.

[Id. at 298, 739 A.2d 409.]
Nevertheless, we are compelled to reverse the judgment of the Appellate Division and remand the matter to the Law Division for trial. Our view of the record persuades us that the allegations of deception asserted by Wall Township, if proved, would require a court to invalidate the original ordinance that initially rezoned the property in question from residential to cemetery use. The Township's affidavits allege that the original plan consisted of a "pastoral, park-like setting, with sprawling greens, no headstones, and a stone walkway encircling the property." The revised site plan was "drastically different" and no longer depicted a pastoral setting with in-ground graves. "The original park-like setting was instead replaced with large mausoleum structures and showed the entire property being surrounded by a massive stone wall...." As the Appellate Division observed in Zoning Bd. of Adjustment of Green Brook v. Datchko, 142 N.J.Super. 501, 508, 362 A.2d 55 (1976):
If, as here, a municipal authority has been induced to grant relief in connection therewith by fraud, it need not stand idly by. It or the municipal governing body may institute an action, such as that in the present case, to rescind the relief so granted and to enjoin what is actually a violation of the zoning ordinance and plan.

[Ibid.]
Accord Stafford v. Stafford Tp. Zoning Bd., 154 N.J. 62, 77-78, 711 A.2d 282 (1998).
As noted, the original Township ordinance permitted mausoleums only as an accessory use. The record informs us that that ordinance also imposed lot coverage and height limitations, the validity of which are uncontested. The cemetery operator asserts that its revised plan complies with those limitations. Accordingly, we need not and do not address any questions relating *55 to the Township's authority to include in the 1995 ordinance provisions regulating the construction of mausoleums on property dedicated to cemetery use. Because the authority of the Township to enact the 1995 Ordinance is not an issue that requires resolution in this appeal, the land coverage and height limitations set forth in that ordinance will govern the construction of mausoleums on the cemetery property in the event that the Township does not prevail in the remand proceeding on the deception issue.
Reversed and remanded.
VERNIERO, J., concurring.
The Court concludes that the New Jersey Cemetery Act, N.J.S.A. 8A:1-1 to -12-6 (Act), preempted Wall Township (Township) from adopting an ordinance rezoning property from cemetery to residential use after the New Jersey Cemetery Board (Board) had issued a certificate of authority permitting the property to be used for cemetery purposes. The Court also holds that if the Township proves before the Law Division that it was deceived by Trinity Cemetery Association, Inc. (Trinity) in the course of consenting to Trinity's cemetery application, then the Township could rescind that consent.
I agree with the Court's two holdings. I write separately to express my view that the Township's 1995 ordinance restricting mausoleums is invalid on its face. I thus would conclude that the approval process should begin anew, irrespective of whether deception is proved. That disposition would afford the Township the opportunity to reevaluate Trinity's application on a clean slate. It also would alert municipalities to avoid exceeding their statutory authority and to exercise care when adopting ordinances in future cases.

I.
The Township adopted Ordinance No. 25-1995 in 1995 (the 1995 Ordinance) in the course of consenting to Trinity's application to develop and construct a cemetery within the municipality's borders. The 1995 Ordinance designates the zone within which Trinity's land is located as a cemetery zone, limits mausoleums in that zone to uses "accessory" to a cemetery, and imposes other restrictions, including limiting the lot coverage of mausoleums and other accessory structures to nineteen percent. Those restrictions are inconsistent with the dictates of a long-standing decision, Cedar Park Cemetery v. Hayes, 132 N.J.Super. 572, 334 A.2d 386 (Law Div. 1975), and contradict the Act's legislative history and its plain language.
In Cedar Park, the Law Division invalidated a local ordinance that would have banned all mausoleum construction, concluding that the municipality lacked the authority to impose such a ban under the Act. The Attorney General, as counsel for the Board, had argued for that result. Cedar Park's holding has been understood and followed without hue and cry from any quarter for the past twenty-five years. Citing that decision, one noted commentator has interpreted the Act as follows:
As to cemetery regulation, municipalities may exclude them altogether, under the zoning power, but once the use is permitted it cannot be subsequently restricted by rezoning of the area, nor may building of mausoleums on the property be forbidden if they meet uniform standards and conform to reasonable local height and setback requirements.
[William M. Cox, New Jersey Zoning and Land Use Administration § 21-3.2(m) at 442 (2001).]
Under the 1995 Ordinance, any proposed construction of mausoleums by Trinity *56 that exceeds nineteen percent of lot coverage would be forbidden, whether or not Trinity satisfied local height and setback requirements. That, I submit, is contrary to the spirit, if not the letter, of Cedar Park and the unambiguous language of the Act. Further, even if the 1995 Ordinance is consistent with the dictates of Cedar Park, that does not end the inquiry because Cedar Park was decided prior to the 1979 revisions to the Act. (As more fully described in Section II below, those revisions define expressly the parameters of local control, some of which are breached by the 1995 Ordinance.)
The Act provides considerable authority to municipalities to impose height and setback requirements on mausoleum construction, N.J.S.A. 8A:3-14.1, and to supervise all phases of such construction, N.J.S.A. 8A:3-14(c). Those are significant powers, especially when coupled with the municipality's authority to deny the creation of the cemetery in the first instance. As observed by the Cedar Park court:
Under the [ ] Cemetery Act each municipality retains a substantial residuum of power. They may exclude new cemeteries or prevent territorial expansion of cemeteries within municipal boundaries. N.J.S.A. 8A:6-5; see Clifton v. Cresthaven Cemetery Ass'n, 136 N.J. Eq. 56, 40 A.2d 352 (N.J.Ch. 1944). The necessary compliance by a cemetery or mausoleum with local regulations is expressed in several sections. N.J.S.A. 8A:3 [3]; N.J.S.A. 8A:10-4. Significantly, the Legislature left with municipalities the power to enact ordinances pertaining to interment. N.J.S.A. 26:6-2, 5, 36, 40. With regard to mausoleum construction, application must be made for a building permit; the municipal building inspector issues the building permit, supervises construction and must certify the structure before use. N.J.S.A. 8A:3-14(a), (c), (d).

[Cedar Park, supra, 132 N.J.Super. at 581, 334 A.2d 386.]
When interpreting a statute, a court's "overriding goal must be to determine the Legislature's intent." Dep't of Law & Pub. Safety v. Gonzalez, 142 N.J. 618, 627, 667 A.2d 684 (1995). However, "[i]f the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." State v. Butler, 89 N.J. 220, 226, 445 A.2d 399 (1982). The statute here could not be clearer. It provides: "Any local ordinance ... enacted regulating the construction of said [mausoleums] shall be of no force or effect[.]" N.J.S.A. 8A:3-14.1. When a municipality limits mausoleums to accessory use only and then proscribes their lot coverage, it is clearly "regulating" their "construction" in the ordinary sense of those terms. "Our task is to interpret the statute sensibly, attributing ordinary and logical meaning to the statute's text." Alderiso v. The Med. Ctr. of Ocean County, Inc., 167 N.J. 191, 199, 770 A.2d 275 (2001). Simply stated, any ordinance that restricts mausoleums to accessory uses and limits their lot coverage constitutes a regulation on their construction in violation of N.J.S.A. 8A:3-14.1.
The holding in Diocese of Metuchen v. Township of Piscataway, 252 N.J.Super. 525, 600 A.2d 173 (Law Div.1991), one of the few reported cases in this area, does not support the 1995 Ordinance. In that case, the Law Division concluded that N.J.S.A. 8A:3-14.1 did not preclude a municipality from regulating off-street parking near a mausoleum. In reaching that conclusion, the court was persuaded by the fact that the Act did not expressly prohibit a municipality from restricting off-street parking and that the power to adopt that form of regulation had been conferred specifically *57 on municipalities under Title 40. "`[I]t is well-established that a specific statutory provision dealing with a particular subject prevails over a general statute on the same subject.'" Id. at 531, 600 A.2d 173 (quoting Zoning Bd. of Adjustment v. Serv. Elec. Cable T.V. of N.J., Inc., 198 N.J.Super. 370, 381, 487 A.2d 331 (App.Div.1985)) (alteration in original). Here, the Township's regulation of mausoleums is at variance with the Act and implicates no other statute specifically governing those structures. The principle espoused in Diocese of Metuchen is thus inapplicable.

II.
On June 12, 1978, Assembly Bill No. 1491 (the Bill) was introduced, providing in part: "Any local ordinance heretofore or hereinafter enacted regulating the construction of any or said [mausoleums] shall be of no force and effect." The Assembly amended that language on January 16, 1979, to authorize municipalities to regulate all forms of mausoleum construction through the zoning power. It accomplished that purpose by adding the phrase "except the municipal zoning ordinance." Thus, the January 16, 1979, Assembly version of the Bill provided: "Any local ordinance except the municipal zoning ordinance heretofore or hereinafter enacted regulating the construction of any or such structures shall be of no force and effect." (Emphasis added).
While the Legislature was considering the Bill, the Law Division decided Roman Catholic Diocese of Newark v. Cerone, No. L-35806-79 (Law Div. Feb. 15, 1979). At issue in Cerone were a series of regulations that the Borough of North Arlington had imposed on mausoleums, including those establishing height, setback, and dimension requirements. The court invalidated some of the regulations at issue, such as a 500-foot setback requirement, which the court deemed unreasonable. In dicta, the court approved another restriction, one that limited mausoleums to one per cemetery. That restriction, however, was not contested, and thus was not in issue, because the cemetery's application sought approval for only one mausoleum. In an unreported decision, the Appellate Division affirmed.
On June 25, 1979, the Senate amended the Bill to delete the phrase "except the municipal zoning ordinance" that the Assembly had added. At the same time, the Senate adopted this language: "provided, however, that any municipality may enact zoning ordinances which provide for reasonable height and setback requirements in keeping with such standards established for property immediately abutting a cemetery." According to the statement accompanying the Senate's revisions, those revisions were intended to
conform[ ] the language of the bill to a recent decision by the New Jersey Superior Court (Roman Catholic Diocese of Newark v. Cerone, Superior Court, Law Division, Docket No. L-35806-76, 1979). In that decision, the court rules that, while mausoleum construction may be subject to a municipality's zoning ordinances, such ordinancessuch as those pertaining to height and setback requirementsmust be "reasonable."
[Assembly State Government, Federal and Interstate Relations and Veterans Affairs Committee Statement to Assembly Bill No. 1491 of 1979 (Bill Statement).]
The Legislature ultimately adopted the Senate's revisions. Hence, the current text of N.J.S.A. 8A:3-14.1 reads in pertinent part:
Any local ordinance heretofore or hereinafter enacted regulating the construction of said [mausoleums] shall be of no *58 force and effect; provided, however, that any municipality may enact zoning ordinances which provide for reasonable height and setback requirements in keeping with such standards established for property immediately abutting a cemetery.
The decision in Cerone, when read in conjunction with the portion of the Bill Statement quoted above, supports the conclusion that the 1995 Ordinance is facially invalid. Because N.J.S.A. 8A:3-14.1 does not expressly authorize a municipality to limit the number of mausoleums, the Legislature intended to conform the Act only to that portion of Cerone that it accepted (and which it expressly included in the Bill Statement), namely, the portion permitting municipalities to enact "reasonable" height and setback requirements on mausoleums. The remaining portions of Cerone (an unreported decision) serve no precedential value, and cannot reliably be considered part of our common law. R. 1:36-3; see also Lance A. Wade, Note, "Honda Meets Anastasoff: The Procedural Due Process Argument Against Rules Prohibiting Citation to Unpublished Judicial Decisions," 42 B.C. L.Rev. 695, 710 (2001) (observing within context of federal circuit court rules that decision's unpublished status "create[s] no new law contributing to common law development").
Moreover, the Act provides almost unfettered authority to the Board to regulate a cemetery company's realty and other assets. The Act states:
The New Jersey Cemetery Board shall have full power and authority to administer the provisions of this act and shall have general supervision and regulation of and jurisdiction and control over all cemetery companies and their property, property rights, equipment and facilities so far as may be necessary for the purpose of carrying out the provisions of this Title.

[N.J.S.A. 8A:2-2.]
Within the ambit of that broad grant of power is at least an implied authority for the Board (and not for a municipality) to limit or otherwise regulate mausoleums.
Absent the Cerone decision, the Bill's history verifies that the Legislature considered unlimited authority for municipalities in respect of mausoleum regulation and then settled on the carefully circumscribed authority reflected in the statute's current text. In adopting that text, the Legislature balanced notions of home rule against its concern over "contradictory local requirements" governing mausoleum construction. Bill Statement. In so doing, it enacted an unambiguous statute that all courts must respect and "`enforce [] according to its terms.'" Sheeran v. Nationwide Mut. Ins. Co., 80 N.J. 548, 556, 404 A.2d 625 (1979) (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L. Ed. 442, 452 (1917)).
Although the Act's legislative history supports the conclusion that the 1995 Ordinance is invalid, one need look no further than the plain language of the Act to reach that result. See Butler, supra, 89 N.J. at 226, 445 A.2d 399 (emphasizing that legislative history need not be considered when statute is unambiguous on its face). In that regard, I cannot improve on the observation of Justice Felix Frankfurter, whose view concerning the Supreme Court's construction of an act of Congress in Shapiro v. United States, 335 U.S. 1, 42-43, 68 S.Ct. 1375, 1397, 92 L. Ed. 1787, 1812 (1948) (Frankfurter, J., dissenting), applies with equal force to the case at hand:
Construction, no doubt, is not a mechanical process and even when most scrupulously pursued by judges may not wholly escape some retrospective infusion so *59 that the line between interpretation and substitution is sometimes thin. But there is a difference between reading what is and rewriting it.
In short, I would enforce the literal terms of the statute. In so doing, I would apply a common-sense meaning of "construction" to conclude that the 1995 Ordinance impermissibly regulates mausoleums and is thus void.

III.
Because the Township consented to Trinity's application based on an invalid ordinance, the approval process should begin again, irrespective of whether deception was involved. Under that circumstance, Trinity would be required to resubmit its plan to the Township on a clean slate. The Township then would be free either to (1) withhold its consent to Trinity's resubmitted plan, whereupon this matter would end, or (2) consent to the plan, in which case Trinity would be required to obtain a certificate of authority from the Board in addition to all local permits and site plan approval from the Township.
I also would recognize that in the exercise of its threshold power, the Township may approve or disapprove Trinity's plan depending on the number of mausoleums proposed. The parties do not dispute that, by virtue of its authority, the Township may condition its consent to Trinity's plan on the applicant's intended use of mausoleums. The municipality, however, cannot approve Trinity's application and then forbid, curtail, or otherwise regulate the construction of mausoleums, except as expressly permitted by the Act.

IV.
In sum, I concur in the specific holdings of the Court. For the reasons stated, however, I also would hold expressly that the 1995 Ordinance is facially invalid. Thus, the approval process should begin anew, whether or not Trinity deceived the Township into consenting to its application in the first instance.
ZAZZALI, J., concurring.
I write separately to address the question, which we do not decide here, whether a municipality may limit the number of mausoleums built in a cemetery under the Cemetery Act. N.J.S.A. 8A:1-1 to 12-6. In my view, the Cemetery Act does not preclude municipalities from regulating the number of mausoleums that may be built in a cemetery. I therefore conclude that an ordinance establishing a cemetery zone with mausoleums as accessory structures is valid and could be enforced.

I
Our Legislature has allowed joint State and local oversight of the construction of public mausoleums for over eighty-five years. The need to supervise mausoleum construction arose in the early twentieth century because public mausoleums often were dilapidated structures built by speculative companies. See David Charles Sloane, The Last Great Necessity: Cemeteries in American History, 222 (1991) (commenting that mausoleums historically were "shoddily built, and not only the cemetery but also the customers were defrauded"). Charging the State Board of Health with approving plans and specifications for the "building, construction or erection" of mausoleums, our Legislature required local boards of health to supervise the actual building process. L. 1916, c. 233. A modified version of that law was incorporated in the Cemetery Act, L. 1971, c. 333, § 8A:3-14. The Legislature eventually transferred the State's oversight responsibility from the Department of Health to *60 the Department of Environmental Protection (DEP). L. 1973, c. 219, § 6.
In 1979, the State's responsibility for approving plans for mausoleum construction was transferred yet again, this time from the DEP to the Department of Community Affairs (DCA). L. 1979, c. 255 (codified at N.J.S.A. 8A:3-14 to 14.1). That move codified an agreement that had been reached between the DEP and the DCA whereby, shortly after the Uniform Construction Code Act was adopted, the DEP allowed the construction experts in the DCA to handle oversight of mausoleum construction. See Senate State Government, Federal and Interstate Relations and Veterans Affairs Committee, Statement to Assembly Bill No. 1491 (stating intent to transfer supervisory power to DCA because of "expert staff in the field of construction"). The legislation also required the DCA to establish "rules and regulations regulating the construction of public mausoleums" and prohibited any such local rules except for ordinances providing for reasonable height and setback requirements. N.J.S.A. 8A:3-14.1. More specifically, that statute provides in part that "[a]ny local ordinance ... regulating the construction of [public mausoleums] shall be of no force or effect ... [except] zoning ordinances which provide for reasonable height and setback requirements." Ibid.
The 1979 law settled an ambiguity in the Cemetery Act concerning whether towns were permitted to establish construction code standards for mausoleums. See Cedar Park Cemetery v. Hayes, 132 N.J.Super. 572, 583, 334 A.2d 386 (Law Div.1975) (holding that towns could regulate "setback distances, building dimensions and construction standards" of mausoleums under Cemetery Act) (emphasis added). The legislation was additionally intended to conform with an unpublished Law Division decision holding that towns were allowed to impose reasonable height and setback conditions on mausoleum construction. Senate State Gov't, Federal and Interstate Relations & Veterans Affairs Committee Statement to A 1491(2R).
The case in point is Roman Catholic Diocese of Newark v. Cerone, No. L-35806-76 (Law Div. Feb. 15, 1979), where the Law Division held that municipalities may regulate mausoleum construction by establishing reasonable height and setback requirements. The ordinance in that case also permitted the municipality to limit the number of mausoleums to one per cemetery. In ruling, the trial court confirmed that municipalities retained the power to regulate the number of mausoleums in a cemetery, by specifically noting that "[t]he restriction of one mausoleum per cemetery... is facially valid." Cerone, (slip op. at 29). Although the Legislature, as discussed above, intended to tailor the Cemetery Act amendments to conform to the Cerone decision, the Legislature adopted Cerone's holding only with respect to height and setback requirements and not the language permitting municipalities to regulate the number of mausoleums in a cemetery.
The adoption by the Legislature of one aspect of Cerone and not another, in my opinion, does not evince an intent to prevent municipalities from regulating the number of mausoleums in a cemetery. Instead, the Legislature's codification of Cerone's holding that municipalities may establish reasonable height and setback requirements corresponds to the narrow purpose of the bill-to effect the transfer of supervisory authority over mausoleum construction from the DEP to the DCA. I believe that if the Legislature had had any reservation about Cerone's holding regarding a municipality's reserved power to regulate the number of mausoleums per *61 cemetery, it would have said so. Rather, aware that the DCA presumably would assume regulatory oversight over height and setback requirements under its new authority, the Legislature's reference to Cerone suggested that it considered it prudent not to interfere with the common-law rights of municipalities recognized in the trial court's decision. The Legislature did not need to codify a power long understood to be reserved to municipalities.
Finally, assuming arguendo that Cerone was the first court to recognize municipal authority to limit the construction of mausoleums, the argument that the Legislature adopted only one part of Cerone and rejected the other part is belied by the legislative commentary to the bill and runs contrary to a fundamental rule of statutory construction that "a partial codification of a common-law rule does not necessarily abolish such portion of the rule not encompassed within the statute." 15A Am. Jur.2d Common Law § 15. See also Blackman v. Iles, 4 N.J. 82, 89, 71 A.2d 633 (1950). ("If a change in the common law is to be effectuated, the legislative intent to do so must be clearly and plainly expressed.")
The scope of the 1979 law was considered by the Law Division in Diocese of Metuchen v. Township of Piscataway, 252 N.J.Super. 525, 531, 600 A.2d 173 (Law Div.1991). The court concluded that N.J.S.A. 8A:3-14.1 does not preclude a municipality from regulating off-street parking requirements for a proposed mausoleum. Although recognizing that section 14.1 could be read narrowly to permit a municipality to regulate only height and setback requirements, the court noted that municipalities also were specifically authorized under the Municipal Land Use Law (MLUL) to establish standards for "off-street parking." N.J.S.A. 40:55D-65d. Ibid. Because of that separate provision under the MLUL, the court held that the Cemetery Act did not preclude local regulation of off-street parking near a mausoleum. Ibid.

II
The Cemetery Act does not preclude the Township from limiting the number of mausoleums in a proposed cemetery. The Legislature intended N.J.S.A. 8A:3-14.1 to prohibit municipalities from regulating the "construction" of mausoleums. The term "construction" is open to interpretation. A broad interpretation of that term would preclude a municipality from restricting the number of mausoleums that may be built in a cemetery. Neither the Attorney General, appearing amicus on behalf of the Cemetery Board, nor the lower courts advance that view. Alternatively, the term "construction," particularly when analyzed within the context of the Cemetery Act, may be interpreted to preclude only local interference with the process involved in physically building such structures. I am confident that the latter view is the more sensible interpretation of the term "construction" and is more consistent with the spirit of the Cemetery Act.
"Construction," although not defined under the Cemetery Act, is defined under the Uniform Construction Code Act to mean "construction, erection, reconstruction, alteration, conversion, demolition, removal, repair or equipping of buildings or structures." N.J.S.A. 52:27D-121. Moreover, "construction" commonly means "the form or manner in which something has been put together." Webster's Third New International Dictionary (1971). Within the context of the Cemetery Act, the term thus connotes the building and design of mausoleums and generally precludes local regulation of those activities. The preclusion of local regulation of construction, however, does not affect the authority of a *62 township to regulate the number of mausoleums to be built in a cemetery.
That interpretation of the term "construction" is congruent with the function of the agency that is charged with overseeing that activity: the DCA. The DCA's expertise generally is in supervising how buildings are to be constructed, not how many should be constructed. The fact that the Legislature requires the DCA to establish appropriate criteria for the construction of mausoleums consistent with the Uniform Construction Code suggests that the Legislature was concerned with preempting a municipality's ability to impose its own unique construction code requirements on cemetery corporations, with the exception of height and setback requirements.
Moreover, that view accords with the historical scope of regulatory power exercised by the State Department of Health and the DEP prior to the DCA's oversight responsibility after the 1979 amendments. Prior to the DEP's regulation under the Cemetery Act, the State Department of Health reviewed construction plans according to specific statutory provisions regarding exterior construction as well as the interior sealing of crypts. Cedar Park, supra, 132 N.J.Super. at 579, 334 A.2d 386. The DEP's supervision of mausoleum construction, however, centered on drainage and sewage concerns. In Cedar Park, the DEP conceded that its power to regulate construction could not exceed its own administrative standards to insure that sewage construction and corresponding sewage systems were installed and functioned properly. Id. at 579-80, 334 A.2d 386; N.J.A.C. 7:9. The control exercised by both of the DCA's agency predecessors evidences that at no time did the Legislature empower a state agency to determine whether a mausoleum could be built. Instead, the overriding concern was the manner in which mausoleums should be built.
The Legislature's decision in 1979 to transfer authority to the DCA validates this concept. The transfer from the DEP to the DCA, as discussed above, sought to place mausoleum construction under the jurisdiction of the most qualified administrative agency to handle construction issues. The Uniform Construction Code Act grants the DCA authority to issue regulations pursuant to the Act. The DCA's own regulations concerning the Uniform Construction Code mirror the self-imposed restraints over construction practiced by the State Department of Health and the DEP. The stated intent and purpose of the DCA's regulations include:
1. To encourage innovation and economy in construction and to provide requirements for construction and construction materials consistent with nationally recognized standards.
2. To formulate such requirements, to the extent practicable, in terms of performance objectives, so as to make adequate performance for the use intended as the test of acceptability.
...
5. To insure adequate maintenance of buildings and structures throughout the State and to adequately protect the health, safety and welfare of the people.
6. To eliminate unnecessary duplication of effort and fees in the review of construction plans and the inspection of construction.

[N.J.A.C. 5:23-1.3]
Stated simply, the DCA is a watchdog agency regarding construction standards and methods, not a council sitting in judgment deciding whether construction is to proceed in the first place. If the Legislature had been concerned with localities *63 limiting the number of mausoleums to be created within cemeteries, it likely would have assigned that regulatory responsibility to the Cemetery Board rather than to the DCA. The State's authority over mausoleum construction, however, is assigned expressly to the DCA and no provision in the Cemetery Act expressly or implicitly grants the Cemetery Board such power.
Furthermore, as the court in Diocese of Metuchen concluded, although N.J.S.A. 8A:3-14.1 may be read technically to preclude any municipal regulation over mausoleums other than height and setback requirements, such an interpretation should not prevail where the Legislature has assigned municipalities powers and responsibilities under separate statutory provisions that do not conflict with the regulation of the "construction" of mausoleums. In Diocese of Metuchen, because the municipality was expressly authorized under N.J.S.A. 40:55D-65d to establish standards for "off-street parking," the court held that the Cemetery Act did not preclude local regulation of off-street parking near a mausoleum. 252 N.J.Super. at 531, 600 A.2d 173. In this case, that same section of the MLUL, section 65, provides that municipalities may adopt zoning ordinances that regulate "the percentage of lot or development area that may be occupied by structures." N.J.S.A. 40:55D 65b. The authority of the Township to regulate the number of mausoleums to be built in a cemetery is therefore not only permissible, but also is a prerogative quite distinct from the authority to regulate the manner in which those structures are constructed. The Cemetery Act clearly precludes only the latter of these rights.
Quite apart from the language of the Act, the legislative history of N.J.S.A. 8A:3-14.1 supports that conclusion. The genesis of the 1979 law was the Legislature's intent to transfer the State's authority to supervise mausoleum construction from the DEP to the DCA and its concern with the existing "contradictory local requirements" relating to mausoleum construction. Assembly State Government, Federal and Interstate Relations and Veterans Affairs Committee Statement to Assembly Bill No. 1491 of 1978. The Legislature intended to conform the Cemetery Act with an unpublished decision that not only allowed local height and setback requirements, but also upheld a local restriction on the number of mausoleums that could be created in a cemetery. Cerone, supra, (slip op. at 29). There is no indication that the Legislature ever has been concerned about municipalities abusing their authority to decide whether to limit the number of mausoleums in cemeteries within its borders. Both N.J.S.A. 8A:3-14 and N.J.S.A. 8A:3-14.1 are designed to ensure that mausoleums are built in a safe manner, are subject to strict State and local oversight, and conform to uniform, statewide construction code requirements and not to contradictory local requirements. See N.J.S.A. 8A:3-14b (stating that the DCA must ensure that mausoleums will not constitute a "hazard to public health or safety"). Neither of these statutes restricts municipal discretion concerning the number of mausoleums to be built within the cemetery. If municipalities were divested of that power, certain municipalities might decline to approve the creation of cemetery zonesa result the Legislature could not have intended.
I add that although a municipality may limit the number of mausoleums to be built in a cemetery, it cannot altogether preclude mausoleums from being built in a cemetery located within its borders. In Cedar Park Cemetery v. Hayes, supra, 132 N.J.Super. at 578, 334 A.2d 386, a Paramus ordinance declared mausoleums a prohibited use in the Borough. The court, however, observed that under the Cemetery Act "[c]emetery land is dedicated to all permissible statutory uses once the municipality has exercised its limited discretion *64 and permitted the use within its boundaries." Id. at 579, 334 A.2d 386. Because the construction of mausoleums is a permissible use under the Cemetery Act, the court correctly held that towns cannot bar such structures from being built.
In sum, I conclude that the Legislature did not intend to divest municipalities of the power to regulate the number of mausoleums created within their borders. The prohibition against local "regulation of construction" of mausoleums under N.J.S.A. 8A:3-14.1 was intended to preclude only municipal regulation of the construction of mausoleums, not local limitation on the number of those structures that may be built. The Township's 1995 ordinance creating a cemetery zone with mausoleums as accessory structures therefore is valid.

III
I concur with the holdings of the Court. I would also hold that although the Township's 1997 ordinance rezoning Trinity's property from cemetery use to residential use is preempted by the Cemetery Act, the Township's 1995 ordinance creating a cemetery zone with mausoleums as an accessory use remains valid. In enacting the Cemetery Act, the Legislature intended to preclude local regulation of construction standards for public mausoleums. However, the municipality's "residuum of power" includes the power to regulate the number of mausoleums that may be built in a cemetery. Cedar Park, supra, 132 N.J.Super. at 581, 334 A.2d 386.
For reversal and remandmentChief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, and ZAZZALI6.
OpposedNone.