**TAX COURT OF NEW JERSEY**



**JOSHUA D. NOVIN**
**Judge**

Dr. Martin Luther King, Jr. Justice Building
495 Dr. Martin Luther King, Jr. Blvd., 4th Floor
Newark, New Jersey 07102
Tel: (609) 815-2922, Ext. 54680

**NOT FOR PUBLICATION WITHOUT THE APPROVAL**
**OF THE TAX COURT COMMITTEE ON OPINIONS**

July 22, 2025

Ryan S. Curran, Esq.
Curran Law Firm
59 Lincoln Park
Suite 250
Newark, New Jersey 07102

Heather Lynn Anderson
Deputy Attorney General
Division of Law
R.J. Hughes Justice Complex
P.O. Box 106
Trenton, New Jersey 08625-0106

> Re:  31 Club, Inc. v. Dir., Div. of Taxation
> Docket No. 011518-2017

Dear Mr. Curran and Deputy Attorney General Anderson:

This letter shall constitute the court's opinion on plaintiff's motion for summary judgment seeking entry of an order awarding attorney's fees and costs, under N.J.S.A. 54:51A-22; and on the Director's motion for summary judgment seeking entry of an order enforcing the settlement agreement placed on the record on February 12, 2025.

For the reasons explained more fully below, the plaintiff's motion is denied and the Director's motion is granted.

## I.  Procedural History and Factual Findings

Following an audit of 31 Club, Inc. ("plaintiff"), for the tax periods ending December 31, 2010, December 31, 2011, December 31, 2012, and December 31, 2013, the Director, Division of Taxation (the "Director") asserted deficiencies of Sales and Use Tax, N.J.S.A. 54:32B-1 to 29,


Interpreter


ADA
Americans with
Disabilities Act


ENSURING
AN OPEN DOOR TO
JUSTICE



Corporation Business Tax, N.J.S.A. 54:10A-1 to 41, and Gross Income Tax, N.J.S.A. 54A:1-1 to 12-6, against plaintiff and plaintiff's shareholders.[1]

Thereafter, the plaintiff pursued administrative appeal remedies with the Director's Conference and Appeals Branch. On May 16, 2017, the Director issued a Final Determination letter finding plaintiff liable for $100,501.80 in deficiencies of Sales and Use Tax, N.J.S.A. 54:32B-1 to 29, Corporation Business Tax, N.J.S.A. 54:10A-1 to 41, and Gross Income Tax, N.J.S.A. 54A:1-1 to 12-6, (the "Final Determination").

On August 8, 2017, plaintiff filed a complaint with the Tax Court challenging the Director's Final Determination. The fourth count of plaintiff's complaint sought "reimbursement of reasonable attorney's fees on account of [p]laintiff's assertions of bad faith against it by [d]efendant [Director]."

On February 12, 2025, the court conducted a case management conference on the record (the "Case Management Conference"). Present during the Case Management Conference was plaintiff's counsel, plaintiff's managing partner, Michael Fernandez ("Mr. Fernandez"), and the Director's counsel.

During the Case Management Conference, plaintiff's counsel and the Director's counsel reported to the court that the parties had reached an amicable resolution of this litigation. The court then asked plaintiff's counsel to memorialize the terms of the settlement agreement on the record. In response, plaintiff's counsel stated the following:

> the resolution which was reached by the parties was any Sales or
> Use tax balance, G[ross] I[ncome] T[ax] balance were zeroed out,

---

[1] Although plaintiff's complaint asserts that "[p]laintiff was audited for sales tax for the 2009-2012 tax years," the court's review of the "Summary of Additional Tax Due" prepared by the Director's Cash Audit Supervisor, Christopher Hanley, attached to plaintiff's complaint, recites that the Sales Tax audit was for the period "01/01/10 to 12/31/13."





and effectively zero. Any audit balance would also be rolled over to this zero-dollar settlement . . . and there was money to be applied from one of the shareholders of the plaintiff, in furtherance of reaching that zero-dollar balance.

In response, the Director's counsel further confirmed the terms of the settlement to the court, stating that:

the Division of Taxation will accept the monies that it has already received from the business, as well as some funds received on the TGI assessment [from the shareholders], in full satisfaction of all business and personal liabilities related to this audit.

Mr. Fernandez acknowledged to the court having heard the terms of the settlement agreement, as recited by plaintiff's counsel and the Director's counsel. Moreover, Mr. Fernandez confirmed to the court that as managing member he was authorized to enter in the settlement on behalf of plaintiff.

Importantly, in response to the court's inquiry whether he understood "the terms of the proposed resolution that has been memorialized by Mr. Curran . . . today, and confirmed by Deputy Attorney General Anderson," Mr. Fernandez replied, "it was broad." Accordingly, the court then inquired whether Mr. Fernandez had any other understanding about the terms of the settlement, thus affording him the opportunity to identify or set forth any additional specific terms, agreement, or provisions regarding the settlement, to which Mr. Fernandez responded, "I agree to zero." In response, the court confirmed with Mr. Fernandez that, "all the monies that have already been collected by the Division of Taxation by or on behalf of 31 Club Inc., as well as monies that are in receipt of the Director, Division of Taxation from certain shareholders for purposes of Gross Income Tax would then result in a zero balance, that's your understanding." Mr. Fernandez then responded to the court, "yes, that's my understanding."






Moreover, the court further confirmed with Mr. Fernandez that the plaintiff entered into the settlement agreement freely and voluntarily. The court further advised Mr. Fernandez that although the Director approved the settlement, the settlement was subject to further approval by the New Jersey Attorney General, which could take several months to obtain. The court then asked Mr. Fernandez if he "was willing to proceed with the settlement agreement upon the terms that have been outlined by the Deputy Attorney General and [plaintiff's] counsel and as set forth in court here today." In response, Mr. Fernandez recited "Yes, your honor."

This matter was subsequently listed for the court's May 8, 2025 telephone conference call calendar. During the May 8, 2025 telephone conference, plaintiff's counsel and the Director's counsel reported to the court that they had reached an impasse regarding a provision under the proposed Stipulation of Dismissal. Specifically, the provision at issue addressed plaintiff's waiver of any claim for attorney's fees against the defendant. Accordingly, on May 8, 2025, the court entered a Case Management Order (the "Case Management Order").

The Case Management Order scheduled an August 25, 2025 peremptory trial date in this matter. In addition, the Case Management Order afforded either party the right to move for entry of an order granting summary judgment, under R. 4:46-1, no later than Thursday, June 19, 2025.

On June 19, 2025, plaintiff filed the instant motion for summary judgment seeking entry of an order awarding plaintiff attorney's fees and costs, under N.J.S.A. 54:51A-22. In support of its motion to "[a]ward reimbursement of legal fees and costs in the amount $25,000 or an amount deemed just under N.J.S.A. 54:51A-22," plaintiff asserts that it is entitled to attorney's fees in this matter because "the State's [audit] position was 'without reasonable basis in fact or law.'"

In response to plaintiff's motion, the Director argues that the proposed settlement and its willingness to accept monies already collected from plaintiff and its shareholders in full






satisfaction of the audit deficiency does not constitute an admission that the audit was invalid. Rather, the Director emphasizes that "Taxation accepted the amounts previously paid in full satisfaction of the liability. Taxation never capitulated that the assessment was incorrect." Moreover, the Director asserts that "[p]laintiff is bound by the [settlement] terms placed on the record. At no time did the parties represent that Taxation would pay to the [p]laintiff any fees, damages, or other costs of suit . . . Therefore, there is no basis in fact or law for [p]laintiff's claim for fees and damages in this case."

In addition, on June 19, 2025, the Director filed the instant motion to enforce the February 12, 2025 settlement agreement. The Director argues that on February 12, 2025, "the parties informed the court that they agreed on the essential terms of a settlement." Plaintiff's counsel set forth the terms of the settlement, defendant's counsel offered further clarity on the settlement terms, and the court reiterated the terms of the settlement to Mr. Fernandez, plaintiff's managing partner. In response, Mr. Fernandez confirmed to the court that what the court recited was his understanding of the settlement. The Director emphasizes that the essential terms of the settlement are that in exchange for the Director retaining all monies that it has collected from plaintiff and its shareholders arising from the asserted tax deficiencies, the Director would "waive any additional amounts due and owing from the audit in this matter." In sum, plaintiff would owe no additional monies to the Director resulting from the audit. Thus, the Director asserts that "all of the essential terms of the settlement were not only agreed to between the parties but were, in fact, placed on the record before this court."

In response to the Director's motion, plaintiff asserts that although it agreed "to resolve the tax liability portion of the matter, there was no discussion regarding [c]ount [f]our of the [c]omplaint, which seeks reimbursement of legal and professional fees under N.J.S.A. 54:51A-22






and R. 4:42-9(a)[(8)]." Rather, it was plaintiff's intention "to ensure that any proposed Stipulation of Dismissal and Closing Agreement provided an avenue for [p]laintiff to seek reimbursement for such fees." However, when the proposed Stipulation of Dismissal "did not contain such language and in fact explicitly prohibited such an avenue for [p]laintiff to potentially seek reimbursement . . . [p]laintiff was unwilling to sign . . . the Stipulation of Dismissal."

## II. Conclusions of Law

### A. Summary Judgment

Summary judgment "'serve[s] two competing jurisprudential philosophies': first, 'the desire to afford every litigant who has a bona fide cause of action or defense the opportunity to fully expose his case,' and second, to guard 'against groundless claims and frivolous defenses,' thus saving the resources of the parties and the court." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 541-42 (1995)).

R. 4:46-2 outlines the circumstances under which summary judgment should be granted:

> if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
>
> [R. 4:46-2.]

In Brill, our Supreme Court explained that "the essence of the inquiry [is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." 142 N.J. at 536 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). In conducting this inquiry, the trial court must engage in a "kind of weighing that involves a type of evaluation, analysis and sifting of evidential materials." Ibid. The standard established by our Supreme Court in Brill is as follows:






> when deciding a motion for summary judgment under R. 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential material presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Id. at 536.]

In considering the material evidence before it with which to determine if there is a genuine issue of material fact, the court must view most favorably those items presented to it by the party opposing the motion and all doubts are to be resolved against the movant. Ruvolo v. American Casualty Co., 39 N.J. 490, 491 (1963). A court charged with "deciding a summary judgment motion does not draw inferences from the factual record as does the factfinder in a trial, . . . [i]nstead, the motion court draws all legitimate inferences from the facts in favor of the non-moving party." Globe Motor Co., 225 N.J. at 480 (internal citations omitted). Thus, the moving party bears the burden "to exclude any reasonable doubt as to the existence of any genuine issue of material fact" with respect to the claims being asserted. United Advertising Corp. v. Borough of Metuchen, 35 N.J. 193, 196 (1961).

"By its plain language, R. 4:46-2 dictates that a court should deny a summary judgment motion only where a party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" Brill, 142 N.J. at 529. However, when the party opposing the motion merely presents "facts which are immaterial or of an insubstantial nature, a mere scintilla, fanciful, frivolous, gauzy or merely suspicious," then an otherwise meritorious application for summary judgment should not be defeated. Judson v. Peoples Bank and Trust Co., 17 N.J. 67, 75 (1954). Hence, "when the evidence is so one-sided that one party


Interpreter


ADA
Americans with Disabilities Act


ENSURING
AN OPEN DOOR TO
JUSTICE



must prevail as a matter of law . . . the trial court should not hesitate to grant summary judgment."

Brill, 142 N.J. at 540 (quoting Liberty Lobby, Inc., 477 U.S. at 252).

Having reviewed the pleadings, briefs, undisputed material statements of fact, and the record in this matter, the court concludes that no genuine issues of material fact are in dispute. Rather, this matter involves an application of law to the undisputed facts contained in the motion record, and thus, are ripe for summary judgment.

        B.    Attorney's Fees

New Jersey has long adhered to the policy that litigants bear their own expenses for attorney's fees and costs, except where specifically authorized by statute, rule, or agreement. Velli v. Rutgers Casualty Ins. Co., 257 N.J. Super. 308, 309 (App. Div. 1998); Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162 (1960). Our Supreme Court has observed that "that sound judicial administration is best advanced if litigants bear their own counsel fees." Satellite Gateway Com. v. Musi Dining Car Co., 110 N.J. 280, 285 (1988) (quoting State, Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 504 (1983)).

Our court rules identify eight separate actions where a trial court may enter an award of attorney's fees. R. 4:42-9(a) provides, in part, that:

> Actions in Which Fee Is Allowable. No fee for legal services shall be allowed in the taxed costs or otherwise, except
>
> (1) In a family action, a fee allowance both pendente lite and on final determination may be made pursuant to R. 5:3-5(c).
>
> (2) Out of a fund in court. The court in its discretion may make an allowance out of such a fund, but no allowance shall be made as to issues triable of right by a jury. A fiduciary may make payments on account of fees for legal services rendered out of a fund entrusted to the fiduciary for administration, subject to approval and allowance or to disallowance by the court upon settlement of the account.






(3) In a probate action, if probate is refused, the court may make an allowance to be paid out of the estate of the decedent. If probate is granted, and it shall appear that the contestant had reasonable cause for contesting the validity of the will or codicil, the court may make an allowance to the proponent and the contestant, to be paid out of the estate. In a guardianship action, the court may allow a fee in accordance with R. 4:86-4(e) to the attorney for the party seeking guardianship, counsel appointed to represent the alleged incapacitated person, and the guardian ad litem.

(4) In an action for the foreclosure of a mortgage, the allowance shall be calculated as follows: on all sums adjudged to be paid the plaintiff amounting to $5,000 or less, at the rate of 3.5%, provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess over $5,000 and up to $10,000 at the rate of 1.5%; and upon the excess over $10,000 at the rate of 1%, provided that the allowance shall not exceed $7,500. If, however, application of the formula prescribed by this rule results in a sum in excess of $7,500, the court may award an additional fee not greater than the amount of such excess on application supported by affidavit of services. In no case shall the fee allowance exceed the limitations of this rule.

(5) In an action to foreclose a tax certificate or certificates, the court may award attorney's fees not exceeding $500 per tax sale certificate in any in rem or in personam proceeding except for special cause shown by affidavit. If the plaintiff is other than a municipality no attorney's fees shall be allowed unless prior to the filing of the complaint the plaintiff shall have given not more than 120 nor fewer than 30 days' written notice to all parties entitled to redeem whose interests appear of record at the time of the tax sale, by registered or certified mail with postage prepaid thereon addressed to their last known addresses, of intention to file such complaint. The notice shall also contain the amount due on the tax lien as of the day of the notice. A copy of the notice shall be filed in the office of the municipal tax collector.

(6) In an action upon a liability or indemnity policy of insurance, in favor of a successful claimant.

(7) As expressly provided by these rules with respect to any action, whether or not there is a fund in court.

(8) In all cases where attorney's fees are permitted by statute.

[R. 4:42-9(a)].

   

Here, plaintiff's motion for attorney's fees arises under R. 4:42-9(a)(8). However, an award of attorney's fees against the Director is only permitted if certain criteria have been met. N.J.S.A. 54:51A-22 states, in pertinent part that,

> (a) A prevailing taxpayer in a court proceeding in connection with the determination, collection or refund of any tax, penalty or interest may be awarded a judgment or settlement for the reasonable litigation costs, not to exceed $15,000, incurred in the proceeding, based upon:
>
> (1) the reasonable expenses of expert witnesses,
>
> (2) the reasonable costs of studies, reports or tests, and
>
> (3) the reasonable fees of attorneys, not to exceed $75 per hour unless by special determination of the court of the existence of a special factor
>
> . . . .
>
> (e) For the purposes of this section, "prevailing taxpayer" means a taxpayer that establishes that the position of the State was without reasonable basis in fact or law. The determination of whether a taxpayer is a prevailing taxpayer is to be determined by the court.
>
> [N.J.S.A. 54:51A-22 (emphasis added).]

Thus, to be permitted an award of attorney's fees under N.J.S.A. 54:51A-22, a taxpayer must: (i) prevail on some or all claims in the underlying litigation; (ii) prove that the Director's position was unreasonable and not supported by the facts or the law; and (iii) the costs and expenses incurred by the taxpayer must be reasonable and not exceed the statutory limits, unless special factors exist. Importantly, prevailing on a claim that the Director's tax assessment was erroneous, does not ensure an award of litigation costs under N.J.S.A. 54:51A-22. If the court finds that the Director's assessment was in error, but had a reasonable basis in law or fact, an award of attorney's fees is not permitted under N.J.S.A. 54:51A-22. See Miller v. Dir., Div. of Taxation,






20 N.J. Tax 482, 488 (2001) (stating that "[a]lthough I have concluded that the Director's position as to plaintiffs' tax liability is incorrect, the Director's position is not 'without reasonable basis in fact or law.'")

Plaintiff argues that under N.J.S.A. 54:51A-22(e), it is entitled to attorney's fees because the "State's position was 'without reasonable basis in fact or law.'"  Plaintiff charges that the Director employed an aberrant accounting methodology during the audit resulting in plaintiff's Sales and Use Tax and Corporate Business Tax liabilities.  Plaintiff asserts that "the Division not only changed its methodology without justification, but knowingly inflated figures prior to C[onference] B[ranch] [of] A[ppeals] ("CBA") review."

In support of its motion, plaintiff relies on Watchung Liquors v. Dir., Div. of Taxation, 2021 N.J. Tax Unpub. LEXIS 32 (2021),[2] for the proposition that the Director "cannot impose tax liability based on a methodology that lacks foundation in documentation or logic, particularly when it contradicts earlier audit positions."  Moreover, plaintiff relies on Aetna Life Ins. Co. v. Dir., Div. of Taxation, 20 N.J. Tax 87 (Tax 2002), for the proposition that "reimbursement is warranted where the D[irector's] conduct demonstrates a lack of justifiable position and creates undue burden."

However, the facts and findings in Watchung Liquors and Aetna Life Ins. Co. are clearly distinguishable from the facts and findings in the instant matter.  In Watchung Liquors, the Director moved for summary judgment claiming that it properly assessed additional tax, interest, and

---

[2]  Importantly however, "no unpublished opinion shall constitute precedent or be binding upon any court."  R. 1:36-3. See Trinity Cemetery Ass'n, Inc. v. Twp. of Wall, 170 N.J. 39, 48 (2001) (concluding that an unreported decision serves no precedential value and cannot reliably be considered part of our common law).







penalties during the audit. 2021 N.J. Tax Unpub. LEXIS 32, *1. The Director asserted that the taxpayer failed to maintain and provide adequate books and records, which authorized it to employ a mark-on methodology to reconstruct the taxpayer's gross sales to calculate the taxpayer's tax liability. The Director asserted that the taxpayer agreed to a 1.35 mark-on ratio during the audit. The taxpayer asserted that it never agreed to a 1.35 mark-on ratio during the audit and that a 1.35 mark-on ratio was too high for the retail liquor industry. Ibid. In denying the Director's motion the court found that material factual issues existed regarding "the reasonableness of the mark-on ratio as applied to other tax years without considering contrary factual proofs" proffered by the taxpayer that the Director allegedly did not review. Id. at *17. Notably, the court stated that it "will not grant summary judgment when presented with an audit that shortcuts a full mark-on reconstruction in favor of values from conflicting tax returns, especially when D[irector's] calculations were based on estimated data." Id. at *18.

In Aetna Life Ins. Co. the court was presented with motions for summary judgment on an issue of statutory interpretation. The taxpayer argued that the Director's method of calculating the retaliatory tax on foreign life and health insurers, under N.J.S.A. 17B:23-5, was erroneous. Specifically, the taxpayer asserted that "(i) special purpose assessments imposed in New Jersey be included in the calculation as taxes and related financial obligations paid in this State, and (ii) special purpose assessments that would be imposed in a foreign state on a New Jersey insurer be excluded from the calculation." 20 N.J. Tax at 89. In contrast, the Director argued that, under N.J.S.A. 17B:23-5, special purpose assessments payable by foreign insurers in New Jersey and by New Jersey insurers in a foreign state "are to be disregarded in calculating [the] retaliatory tax." Ibid. After reviewing the legislative history and Senate Committee Statements the court concluded that the Director's interpretation of the statute was not supported. The court found that the express

   

terms of the statute and the legislative "history demonstrates . . . that, in considering and enacting S. 1749, the Legislature not only was cognizant of N.J.S.A. 17B:23-5 but also recognized the significance to the calculation of retaliatory tax of the phrase 'by another state.'" 20 N.J. Tax at 95.

Notably, in rejecting the taxpayer's application for attorney's fees and costs under N.J.S.A. 54:51A-22(a), the court emphasized that: "no previous reported decision has interpreted the retaliatory tax statute in question . . . , and . . . [that] defendant reasonably could have considered the [Senate] Committee Statements discussed above in interpreting N.J.S.A. 17B:23-5." Thus, the motion record did not reveal that the Director's interpretation of the statute "was without reasonable basis in fact or law." N.J.S.A. 54:51A-22(e).

Here, the plaintiff characterizes the accounting methods employed by the Director under the audit as lacking a foundation resulting in the imposition of erroneous tax liabilities. However, the Director disputes such characterization, arguing that its willingness to resolve this litigation by accepting monies already collected from plaintiff and its shareholders, in full satisfaction of the audit deficiency, does not amount to an admission that the audit was invalid. Moreover, as part of the proposed settlement of this matter, the Director emphasizes that it "never capitulated that the assessment was incorrect."

The court finds that the plaintiff has failed to demonstrate that the Director's audit methodology was without any reasonable basis in fact or law. Plaintiff has presented no credible evidence that the Director's audit employed shortcuts or ignored credible taxpayer data in favor of estimating revenue from conflicting tax returns. Moreover, no evidence has been presented to the court demonstrating that the Director admitted or acknowledged that an aberrant methodology was employed in conducting the audit of plaintiff's business. In sum, there has been no adjudication






on the merits of plaintiff's claims regarding the Director's audit. Accordingly, the court does not find that the plaintiff is a "prevailing taxpayer" under N.J.S.A. 54:51A-22 and denies plaintiff's application for entry of an award of attorney's fees and costs.

### C.  Motion to Enforce Settlement

Our state courts have consistently followed a salutary policy that favors the finality of judgments because "[i]t dictates that litigation must eventually be ended and that at some point the prevailing party be allowed to rely confidently on the inviolability of his judgment." Hodgson v. Applegate, 31 N.J. 29, 43 (1959); see also Jansson v. Fairleigh Dickinson Univ., 198 N.J. Super. 190, 194 (App. Div. 1985). Thus, relief that seeks to undo such conclusiveness and finality must be "granted sparingly." F.B. v. A.L.G., 176 N.J. 201, 207 (2003). However, the rule is not absolute, and "must be weighed in the balance with the equally salutary principle that justice should be done in every case." Hodgson, 31 N.J. at 43.

Operating parallel to those principles is the policy that New Jersey courts "actively encourage litigants to settle their disputes." Puder v. Buechel, 183 N.J. 428, 437-438 (2005). The "'[s]ettlement of litigation ranks high in [the] public policy'" of this State. Nolan ex rel. Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (quoting Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App. Div. (1961)); see also Brundage v. Estate of Carambio, 195 N.J. 575 (2008). We have consistently recognized that "the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone." Dept. of Pub. Advocate v. N.J. Bd. Of Public Utils., 206 N.J. Super. 523, 528 (App. Div. 1985); Peskin v. Peskin, 271 N.J. Super. 261, 275 (App. Div.), cert. denied, 137 N.J. 165 (1994).

Thus, an "agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or compelling circumstances,'






should honor and enforce as it does other contracts." Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div.), cert. denied, 94 N.J. 600 (1983). Provided that the contract is between individuals "of 'full age and [of] competent understanding' . . . , in the absence of express or implied prohibition, [is] sacred and [is] enforced by courts of justice. And courts do 'not lightly interfere with this freedom of contract.'" Sparks v. St. Paul Ins. Co., 100 N.J. 325, 335 (1985) (quoting Driver v. Smith, 89 N.J. Eq. 339, 359 (1918)). Accordingly, "barring fraud or other compelling circumstances, our courts strongly favor the policy that the settlement of litigation be attained and agreements thereby reached, be honored." Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974); see also Nolan, 120 N.J. at 472.

Moreover, an "agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court and even in the absence of a writing." Pascarella, 190 N.J. Super. at 124. "Thus, if [the] parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992). "[A]n agreement to resolve a matter will be enforced as long as the agreement addresses the principal terms required to resolve the dispute." Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 421 N.J. Super. 445, 453 (App. Div. 2011), aff'd, 215 N.J. 242 (2013). "Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div.), certif. denied, 134 N.J. 477 (1993) (quoting Bistricer v. Bistricer, 231 N.J. Super. 143, 145 (Ch. Div. 1987)). A contract's terms are essential when they are necessary to produce a complete transaction. See Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J. Super. 369, 375 (App. Div. 1975).






The burden of proving that the parties entered into a settlement agreement is upon the party seeking to enforce the settlement. Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475 (App. Div. 1997). Here however, the issue presented is not whether a settlement agreement existed rather, whether a dismissal of plaintiff's complaint with prejudice, extinguishing and waiving all causes of action set forth thereunder against the Director, was contemplated under the settlement agreement.

The Director asserts that the essential terms of the settlement were agreed on and read into the record during the court's February 12, 2025 conference. Thus, the Director argues that the settlement agreement reached on the court's February 12, 2025 settlement conference is "legally binding and must be enforced against [p]laintiff." In opposition to the motion plaintiff argues that the settlement agreement should not be enforced because the February 12, 2025 settlement did not address count four under plaintiff's complaint seeking attorney's fees and costs.

The court finds plaintiff's arguments are without merit. At the outset of the February 12, 2025 conference, the court stated that, "it is the court's understanding that the parties have reached an amicable resolution of the dispute between them, is that correct? Plaintiff's counsel responded to the court, "Yes, that is correct your honor." Moreover, plaintiff's counsel reported that the "resolution that was reached by the parties was any Sales or Use tax balance, G[ross] I[ncome] T[ax] balance were zeroed out, and effectively zero. . . ."

Moreover, in response to the court's inquiry to Mr. Fernandez whether he understood "the terms of the proposed resolution that has been memorialized by Mr. Curran . . . today, and confirmed by Deputy Attorney General Anderson," Mr. Fernandez replied, "it was broad." Thus, the court then afforded Mr. Fernandez the opportunity to identify any specific additional understanding that he had about the settlement, to which Mr. Fernandez responded, "I agree to






zero." In response, the court confirmed with Mr. Fernandez that "all the monies that have already been collected by the Division of Taxation by or on behalf of 31 Club Inc., as well as monies that are in receipt of the Director, Division of Taxation from certain shareholders for purposes of Gross Income Tax would then result in a zero balance, that's your understanding." Mr. Fernandez then responded to the court, "yes, that's my understanding."

Accordingly, the court finds that the parties agreed on the essential terms of the settlement in this matter, which settlement was placed on the record on February 12, 2025, by counsel for the plaintiff, plaintiff, and counsel for the defendant. The settlement terms were sufficiently clear and thus allowed for it to be equitably implemented. Counsel for plaintiff, plaintiff, and counsel for the defendant represented to the court that the settlement would result in an amicable resolution of the litigation, thus, such global resolution included all claims that were asserted or that could have been asserted involving the Director's audit, by either party. Notably, when given the opportunity by the court to clarify the settlement terms or address whether there were any other terms or provisions of the settlement, Mr. Fernandez failed to offer any.

Plaintiff's subsequent objections to the Stipulation of Dismissal amounts to the raising of new conditions of the settlement that were not previously agreed to by the parties. The court finds the settlement agreement valid and must be implemented in a manner consistent with terms set forth on the record on February 12, 2025. Therefore, the court grants the Director's motion for summary judgment.

Therefore, plaintiff's authorized officer or representative shall execute and deliver the signed Stipulation of Dismissal to the Director's counsel within thirty (30) days of the date hereof.






**III.** **Conclusion**

For the above-stated reasons, the court denies plaintiff's motion seeking entry of an order awarding plaintiff attorney's fees and costs, under N.J.S.A. 54:51A-22; and the court grants the Director's motion seeking entry of an order enforcing the settlement agreement placed on the record on February 12, 2025.

Very truly yours,

/s/

Hon. Joshua D. Novin, J.T.C.




